[No. B113291. Second Dist., Div. Seven. Mar. 9, 1998.]

GENERALE BANK NEDERLAND, N.V. et al., Plaintiffs and Appellants,
v.
EYES OF THE BEHOLDER LTD., Defendant and Respondent.

## COUNSEL

Loeb & Loeb, Lance N. Jurich and Todd M. Malynn for Plaintiffs and Appellants.

Harold J. Light and Bruce A. Gilbert for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Plaintiffs Generale Bank Nederland, N.V. and EBD (Rotterdam) Finance B.V. (hereinafter referred to collectively as Bank) appeal from a May 7, 1997, order denying Bank's motion pursuant to Code of Civil Procedure section 473 (hereinafter section 473) to set aside judgment denying its third party claim of a superior interest or lien in the assets of debtor Vision International, Inc. The principal appellate issues are whether the trial court erred in failing to grant relief to Bank under the mandatory "attorney affidavit of fault" provision of section 473, or under the discretionary provisions of that statute.

### FACTUAL AND PROCEDURAL BACKGROUND

In an underlying action filed in October 1995, David Henderson and Eyes of the Beholder Ltd. (the latter referred to herein as Henderson)[1] sued Vision International, Inc. (VI) for breach of a production/distribution agreement, claiming VI refused to pay to Henderson the investment and profit participation in a motion picture entitled "Eyes of the Beholder." Under the agreement, Henderson had produced the motion picture and delivered it to VI for distribution; according to Henderson, VI's own documentation indicated that as of June 1995, Henderson was entitled to at least $144,959.35 from VI.

On May 24, 1996, the court granted Henderson a right to attach order and a writ of attachment in the amount of $101,000 against VI's corporate property for which a method of levy is provided. On May 29, 1996, Henderson served the writ on City National Bank, MDP Worldwide (MDP), Fotokem, and Mark Damon Productions. MDP filed with the levying officer, the Los Angeles County Sheriff, a memorandum of garnishee acknowledging that it owed money to VI, but MDP would not release the funds to the

---

[1]David Henderson, the general partner of Eyes of the Beholder Ltd., was not a party to the third party claim proceeding and is not a party to this appeal. For ease of reference, we refer to respondent Eyes of the Beholder Ltd. as Henderson.

levying officer because it believed that Bank had a first position lien and security interest in the funds. City National Bank also informed Henderson that it had frozen over $51,000 in bank accounts in the name of VI. VI apparently defaulted in Henderson's action, which proceeded to a default prove-up on December 16, 1996; a default judgment was entered in favor of Henderson for over $490,000 on February 13, 1997.

Meanwhile, in June 1996, Bank served on the sheriff its verified third party claim asserting a superior security interest in, or lien on, the assets of VI. The third party claim alleged that from 1987 through 1990, Credit Lyonnais Bank Nederland N.V., the former name of Bank, issued certain letters of credit on behalf of VI and "related entities including Vision P.D.G. (the Borrowers) for purposes of financing the production or acquisition of various motion pictures," and the aggregate outstanding indebtedness of the Borrowers as of December 31, 1993, was over $19 million.[2]

The claim alleged that VI, "an affiliate of PDG, as an accommodation to the Borrowers entered into an Accommodation Security Agreement, executed October 26, 1993, . . . granting to the Bank a security interest in all the assets of VI to secure the Prior Loans." In December 1993, the Bank, VI, each Borrower, Mark Damon, and Mark Damon Productions, Inc., entered into a settlement agreement to resolve their disputes and differences regarding the loans; as part of that settlement, the indebtedness was increased, and the Borrowers and Bank entered into a "Consolidated, Amended and Restated Loan and Security Agreement dated as of February 2, 1994." The Bank's security interest was allegedly reflected in several Uniform Commerical Code (UCC) financing statements and copyright mortgages; Bank's security interest and all of its rights in the loans were assigned to EBD (Rotterdam) Finance B.V.; the total amount then owing on the obligation secured by the security interest was alleged to be over $23 million. Attached as exhibits to the third party claim were numerous documents including a consolidated, amended and restated loan and security agreement, to which VI was not a party, and an accommodation security agreement, to which VI was a party, and several copyright mortgages and security agreements, to which VI was a party.

In June 1996, in the underlying breach of contract action against VI, Henderson filed a petition for a hearing on its third party claim pursuant to

---

[2]Our record is unclear as to which entity or entities borrowed the money from Bank. At one point, Henk de Keijzer, executive vice-president of Bank and head of the entertainment business division of EBD (Rotterdam) Finance B.V., stated in an April 29, 1997, declaration that Bank "lent a substantial amount of money to Vision PDG and its related entities." Thus, it is unclear from our record whether Vision PDG or VI, or both, were principal debtors on the loan. We cannot ascertain from our record the manner in which VI and Vision PDG are allegedly "related."

Code of Civil Procedure section 720.310, and a statement of opposition to Bank's third party claim.[3] Henderson raised several wide-ranging grounds in opposition to the third party claim, including the assertions that (1) the third party claim failed to identify the property levied upon in which Bank had a security interest; (2) certain monies collected by VI under the production/ distribution agreement belonged to Henderson and VI had no rights under the agreement to grant to Bank a consensual security interest in Henderson's monies; (3) the purported security interest claimed by Bank was invalid because VI had no right to give a security interest in the property attached by Henderson, no value was given for any purported security interest in the property attached by Henderson, and due to a stock pledge agreement between Bank and VI, Bank owned and/or controlled VI and did not have the right to assert a security interest in its own property; (4) the purported security interest was not entitled to priority over Henderson's attachment lien because the California UCC filing attached as an exhibit to the third party claim was not signed by VI or the secured party and was not perfected prior to the time Henderson became a lien creditor of VI; (5) monies in the accounts at City National Bank and MDP (the alleged successor in interest to Mark Damon Productions, Inc.) were not property of VI for purpose of attaching a security interest, and in any event, Bank has the burden of tracing funds received in connection with its collateral to show that the funds were "in fact identifiably subject to the . . . security interest."

A status conference was held on August 6, 1996, and was attended by counsel for Bank, David Crochetiere of the firm of Loeb & Loeb; the court stated that counsel were to include in their trial briefs "the list of witnesses with the time you estimate they're going to take"; a minute order was filed stating in pertinent part that "Trial briefs shall be lodged with proposed deposition transcripts and exhibits by 4:00 p.m. on 9-16-96. Counsel shall include a list of witnesses and an estimate of time for testimony of each witness."

After several continuances, the third party claim came on for hearing on January 7, 1997. Bank's trial brief did not identify any witnesses it planned

---

[3]Code of Civil Procedure section 720.310, subdivision (a) provides in pertinent part that "Not later than 15 days after the third party claim is filed with the levying officer . . . either the creditor or the third person may petition the court for a hearing to determine the validity of the third party claim and the proper disposition of the property that is the subject of the claim." Pursuant to Code of Civil Procedure section 720.350, subdivision (a)(1), the third party claim constitutes the pleading of the third person, and pursuant to section 720.350, subdivision (a)(2), the creditor's statement in opposition constitutes the pleading of the creditor. At the hearing on a third party claim, the third person has the burden of proof. (§ 720.360.) At the conclusion of the hearing, the court shall give judgment determining the validity of the third party claim. (§ 720.390.) An appeal may be taken from a judgment given pursuant to section 720.390. (§ 720.420.)

All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

to have testify at the hearing on its claim, but indicated that it planned to introduce into evidence portions of the deposition transcripts of Henk de Keijzer, executive vice-president of Bank and head of the entertainment business division of EBD (Rotterdam) Finance B.V.

At the January 7 hearing, Bank was represented by its counsel, Kurtiss Grossman of Loeb & Loeb. Henderson's counsel pointed out to the court that Bank's trial brief did not identify any witnesses, and Henderson had no notice of two witnesses which Bank had brought to the hearing. Bank's counsel stated that the witnesses were Steven Greenbaum, the chief executive officer of VI, and Marvin Grossman, a former officer of VI. Grossman also asserted that "These witnesses are here to rebut an issue that counsel [for Henderson] has raised in his reply papers dealing with whether or not the bank or the property which is the subject of the attachment is owned by Vision." The court asked whether that was the only issue about which the witnesses were going to testify, and Bank's counsel answered, "Yes, your honor." After Henderson objected to the witnesses because they were not identified in Bank's trial brief as required by the August 6, 1996, order, Bank's counsel asked for a continuance because he was not aware that Bank was supposed to name the witnesses in the trial brief, and Mr. Crochetiere, who attended the August 6 hearing, was no longer with Loeb & Loeb. The court denied the continuance, and began the hearing on the third party claim.

Bank's counsel summarized the evidence upon which it intended to rely: "I have the security agreement to put into evidence with Mr. de Keijzer's authentication of it. I have the signed UCC-1 with Mr. de Keijzer authenticating it. I have Mr. de Keijzer telling us how much is currently owed on the loan . . . in transcript from his deposition. I have witnesses from Vision, the chief executive officer of Vision who can testify to approximately the balance on the loan exceeding $15 million." The court responded, "[Y]ou still did not designate these witnesses because what you're talking about are not rebuttal witnesses. You're talking about your case in chief. . . . [¶] You said these witnesses are going to testify to the security agreement, to authenticate it. That is not a rebuttal issue." Bank's counsel then stated, "Okay. I had intended to use them for that also but I do not need that because I have the deposition testimony . . . of my client's officer of the Bank . . . confirming the documents, showing how much is owed on the loan, verifying the UCC-1, verifying that the underlying loans existed, that a dispute broke out between the Bank and Vision International on the repayment of the underlying loans."

Henderson's counsel then asked whether the court was going to permit the witnesses to testify for any purpose, and the court responded, "Not on the

case in chief. That was the purpose of making that order in August so we wouldn't have this situation." Bank's counsel then stated, "Okay. That's fine. . . . [T]hey are only needed for any rebuttal evidence." Bank then indicated that it was relying on the exhibits to the third party claim and the excerpts of de Keijzer's deposition testimony filed by Bank with the trial brief. In particular, Bank asserted that exhibit D to the third party claim, the security agreement, was "the only one [of the exhibits] that's required to be proven." As foundation for that document, Bank relied upon a portion of the deposition testimony of de Keijzer in which he was asked whether VI signed a document called "Accommodation Security Agreement," and he answered that it did, and that the exhibit was a true and accurate copy of the agreement.

Henderson objected to admission into evidence of de Keijzer's testimony on the accommodation security agreement on the ground of no foundation, as de Keijzer's deposition testimony did not establish personal knowledge of the transaction or the document; the court sustained the objection. Discussion ensued about the exhibit, Henderson maintaining that exhibit D to the claim, the accommodation security agreement, was a document (in English) "created here in California by the law firm," and Bank's counsel acknowledging that "the original documents are maintained by the bank in Rotterdam." The court sustained Henderson's objections of lack of foundation and personal knowledge to de Keijzer's testimony relating to the exhibit of the UCC filing, and also to other deposition testimony of de Keijzer. At one point, the court asked Bank's counsel, "Where does [de Keijzer] say he was on the [VI] account? . . . [¶] Where does it say that? Where did he testify that he was in charge of the account? I mean, he's talking [as] a bank officer, bank officer has everybody from the president of the bank on down to operations officer. They don't all know what's going on in . . . every transaction."

The court also sustained Henderson's objections of lack of foundation and hearsay to the October 22, 1996, declaration of de Keijzer to which was attached a one-page exhibit described in the declaration as "a computerized account ledger printout for the two accounts corresponding to the loans to Vision PDG Corp. These computerized account ledgers are maintained in the ordinary course of business, and reflect the current balance owed on the loans to Vision PDG Corp." Henderson's counsel explained his hearsay ground as follows: "[T]o the extent that he's attempting to rely on [Evidence Code section] 1509 which relates to voluminous writings, there's absolutely no foundation related there so I don't see any basis for it." The court concluded that the declaration did not comply with the Code of Civil

Procedure and also Evidence Code section 1271, and sustained Henderson's objection to the declaration. The court stated, "There are four [statutory] criteria [in Evidence Code section 1271] and there's no foundation that he knows how the business records are kept either."

After Bank indicated that it had no other evidence, other than "what's attached [as exhibits] to the third-party claim," Henderson moved that the claim be denied. The court granted the motion. On January 31, 1997, a judgment denying third party claim was entered; the judgment stated in pertinent part that "Having considered the evidence presented, and for good cause shown, the Court granted plaintiff's motion, at the close of claimants' case, to deny the third-party claim of security interest in levied property."

On April 4, 1997, Bank filed motion under section 473 to set aside order and judgment denying third party claim. Bank argued that due to its counsel's mistake, inadvertence, surprise and neglect, no proper foundation was laid for the documentary evidence needed to establish its security interest, and "such errors were further compounded by the fact that two witnesses on behalf of Claimants, who could have authenticated said documents, and testified to the loan balance, were excluded."[4] Characterizing the judgment as a "dismissal," Bank contended it was entitled to relief under the mandatory attorney fault provision of section 473, subdivision (b). Bank also argued that even if relief is not mandatory, the court should exercise its discretion to grant relief. The motion was supported by the declaration of Attorney Kurtiss Grossman, who declared that he took over prosecution of the third party claim after another attorney left his firm; he asked the attorney what had occurred at the status conference, and he did not recall the attorney telling him that witnesses had to be identified in the trial brief; had the excluded witnesses been allowed to testify, they could have laid a proper foundation for the documents, and the defect could have been cured. Grossman also declared that he made a mistake at de Keijzer's deposition in failing to lay a foundation for the admittance of the crucial documents; this was a complex proceeding and he did not understand that the hearing on the

---

[4]Neither of the two witnesses, Steven Greenwald or Marvin Grossman, provided any declarations in support of the 473 motion; Bank's points and authorities alleged in conclusory language that these witnesses could have testified to the authenticity of the security agreement and Greenwald also could have testified as to the balance due on the loans. In light of the fact that there is some question on this record as to whether Vision PDG is a principal debtor on the loans, and that it is unclear as to the nature of the relationship between VI and Vision PDG, it remains unclear whether Greenwald, the chief executive officer of VI, would have personal knowledge of any loan payments if made by Vision PDG. It is these issues which arise on the instant record which help to explain the trial court's remark at the hearing on the 473 motion that "You didn't have any evidence still, even if you had those witnesses of the balance that—anything to give a foundation that there was a balance owing on the debt."

claim was a "full-fledged evidentiary hearing," and further, he was very busy, and, as a fourth-year attorney, he had never undertaken any type of evidentiary hearing before the hearing on the third party claim.

In opposition to the motion, Henderson contended that the mandatory provision of section 473 was not applicable because the court denied the claim on the merits after a trial and there was neither a default nor a dismissal within the meaning of section 473, subdivision (b); moreover, discretionary relief was unavailable because counsel's neglect was not excusable.

After hearing and argument on Bank's motion on May 7, 1997, the court denied the motion. At the hearing, the court disagreed with Bank's characterization of the judgment as based on a default or dismissal, stating that "the clerk did not dismiss the third-party claim. The court denied the third-party claim, which is an appealable order. It's in the way of a judgment. There was an evidentiary hearing. [¶] This was not dismissed because somebody missed a deadline or forgot to calendar something or anything else. So, it's not that kind of a situation. So therefore I don't think that the 473 provisions really apply here at all. . . . [¶] This was, in effect, a trial on the merits." The court also remarked during the hearing that "If you come to trial and you don't have admissible evidence, that's not a deadline or anything else. That was your job in coming to trial, was to have that [evidence] ready." With respect to the showing made in the motion concerning the testimony of the two live witnesses, the court remarked that "You didn't have any evidence still, even if you had those witnesses . . . to give a foundation that there was a balance owing on the debt." In rejecting Bank's characterization of the judgment as one of dismissal, the court at one point explained that Henderson's motion to deny the third party claim, made at the close of Bank's case in chief, was "in effect, a nonsuit, a motion for nonsuit because there was no evidence. That's the way I treated it."

Bank filed timely notice of appeal from the May 7, 1997, order denying its motion to set aside the judgment pursuant to section 473.[5] Bank's opening brief presents the issues as follows: "Did the trial court misinterpret the

---

[5]We are unaware of any appeal from the January 31, 1997, judgment. The instant appeal deals only with the May 7, 1997, order denying relief under section 473. For informational purposes, we note that our record also reveals that thereafter, in March 1997, Henderson levied writs of execution on MDP and Fotokem and recorded with the Secretary of State its judicial lien against VI's property, based on Henderson's February 1997 judgment against VI. On March 14, 1997, Bank served a second, third party claim on the levying officer; Henderson filed opposition to the second, third party claim, and a hearing on that claim was held in July 1997. On July 25, 1997, judgment denying the third party claim was entered;

scope of the 'attorney affidavit' provision of Section 473, or abuse its discretion, when it denied appellant relief from counsel's inadvertent failure to timely designate witnesses for the hearing on appellant's third-party claim?" Before addressing the merits of the appeal, we must first address respondent's contention that the appeal should be dismissed because the order denying the section 473 motion is not appealable.

## I

### Order Denying Relief Under Section 473 Is Appealable

Respondent's contention that the appeal should be dismissed on the ground the order is not appealable is not well taken and is unsupported by any pertinent authority. Respondent attempts to distinguish a case cited by appellants, *Peltier* v. *McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809 [41 Cal.Rptr.2d 182], wherein the court held appealable an order denying plaintiff's motion under section 473 to vacate an order of dismissal for failure to diligently prosecute the case. █ Although *Peltier* is consistent with a line of cases holding that such orders denying relief from dismissals are appealable (see *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-389 [38 Cal.Rptr. 693]), we need not rely upon *Peltier* because we hold applicable here the rule set out in *Cochran* v. *Linn* (1984) 159 Cal.App.3d 245 [205 Cal.Rptr. 550]: "While a denial of a motion to set aside a previous judgment is generally not an appealable order, in cases where the law makes express provision for a motion to vacate such as under Code of Civil Procedure section 473, an order denying such a motion is regarded as a special order made after final judgment and is appealable under Code of Civil Procedure section 904.1, subdivision (b) [see now § 904.1, subd. (a)(2)]." (159 Cal.App.3d at p. 249.)

Inasmuch as the order is appealable, we proceed to address the issue of whether the trial court erred in denying relief under both the mandatory "attorney affidavit of fault" provision of section 473 and under the discretionary provision of the statute.

## II

### Attorney Fault Provision of Section 473, Subdivision (b)

█ Appellants contend that the judgment denying its third party claim was tantamount to a "nonsuit" or a "dismissal" and thus within the attorney

---

Bank has filed an appeal from that judgment in *Henderson* v. *Vision International, Inc.* (B115864) which appeal is currently pending.

fault provision of section 473. To support their characterization of the judgment as in effect a judgment of nonsuit or dismissal, appellants rely upon a comment made by the trial court during the hearing on the 473 motion that Henderson's motion for an order denying the third party claim was *like* a motion for nonsuit. Appellants, however, misinterpret the court's comments; in the context of the entire record of the May 7, 1997, hearing, it is clear that the trial court held an evidentiary hearing on the merits of the third party claim and concluded at the conclusion of Bank's case in chief that Bank had simply not presented sufficient admissible evidence to meet its burden of proof. Under section 720.360, Bank had the burden of proof. (See fn. 3, *ante.*) In this respect, because the court's judgment denying the claim was made without Henderson putting on any evidence in defense, it was similar to a ruling made after a motion for judgment under section 631.8. We deem the trial court's comment to refer to the motion under section 631.8. Both the granting of a motion under section 631.8 (see § 631.8, subd. (c)), and the judgment herein operate as an adjudication on the merits (see § 720.390), rather than like an involuntary dismissal of the claim without any evidentiary hearing.

There is no evidence in our record to support appellants' contention that the instant judgment was tantamount to a judgment of nonsuit under section 581c, dealing with nonsuits in jury trials. Inasmuch as the third party claims procedures do not afford a right to jury trial (see § 720.410), section 581c and cases dealing with nonsuits in jury trials are inapposite here.

Our record unequivocally shows that the instant judgment was one adjudicating the merits of the third party claim and was not in the nature of an involuntary dismissal without any evidentiary hearing. Indeed, the statutory framework governing third party claims does not permit any involuntary dismissals without an evidentiary hearing. Section 720.370 provides in pertinent part that "If the petition for a hearing was made by the creditor, neither the petition nor the proceedings pursuant thereto may be dismissed without the consent of the third person." Section 720.390 requires that at the conclusion of the evidentiary hearing on the third party claim, "the court shall give judgment determining the validity of the third-party claim . . . . Subject to Section 720.420 [pertaining to appeals], the judgment is conclusive between the parties to the proceeding." In light of the instant record and the governing statutory provisions, we conclude that the instant judgment does not constitute a dismissal within the meaning of section 720.370; rather, it constitutes a judgment within the meaning of section 720.390.

The next question we must address is whether the instant judgment pursuant to section 720.390 constitutes a "default judgment or dismissal"

within the attorney fault provisions of section 473, subdivision (b). That provision provides in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any . . . (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (*Ibid.*)

"Enacted in 1988, the attorney affidavit provision of section 473 originally applied only to defaults. Its purpose was 'to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citation.] In the words of the author, ' "Clients who have done nothing wrong are often denied the opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys in *meeting filing deadlines*." ' (Letter of Sept. 14, 1988, from Sen. Ed Davis to Governor George Deukmejian re: Sen. Bill No. 1975, quoted in *Cisneros* v. *Vueve* (1995) 37 Cal.App.4th 906, 911 . . . .)" (*Huens* v. *Tatum* (1997) 52 Cal.App.4th 259, 263 [60 Cal.Rptr.2d 438].)

"In 1992, the attorney affidavit provision was extended to provide mandatory relief from dismissals as well as defaults. The change was considered to be among the ' "[n]oncontroversial proposals . . ." ' contained in an omnibus civil practice bill. The State Bar, which sponsored the amendment, argued that ' "it is illogical and arbitrary to allow mandatory relief for defendants when a default judgment has been entered . . . and not to provide comparable relief to plaintiffs whose cases are dismissed for the same reason." ' (*Peltier* v. *McCloud River R.R. Co.* [, *supra*,] 34 Cal.App.4th 1809, 1820 . . . .) [¶] Although the statute on its face affords relief from unspecified 'dismissal' caused by attorney neglect, our courts have, through judicial construction, prevented it from being used indiscriminately by plaintiffs' attorneys as a 'perfect escape hatch' [citation] to undo dismissals of civil cases. Thus it has been held that the provision does not apply to dismissals under section 583.410 for delay in prosecution of the action because virtually all such dismissals are attorney caused and such a construction would result in a disfavored repeal of the discretionary dismissal statute by implication. [Citations.] Mandatory relief is not available after a summary judgment or judgment after trial, which involve actual litigation and adjudication on the merits. (*Lorenz* [v. *Commercial Acceptance Ins. Co.* (1995)] 40 Cal.App.4th [981,] 990 [47 Cal.App.4th 362], citing *Ayala* v.

*Southwest Leasing & Rental, Inc.* (1992) 7 Cal.App.4th 40, 44 . . . .) Nor may it be used to circumvent the statute of limitations, whose rigid enforcement is backed by venerable and long-lasting public policy considerations. [Citation.]" (*Huens* v. *Tatum, supra,* 52 Cal.App.4th at pp. 263-264.)

As noted by the court in *Bernasconi Commercial Real Estate* v. *St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078 [67 Cal.Rptr.2d 475], involving a dismissal under section 583.250, for failure to serve a complaint within three years, section 473 "may be reconciled with the discretionary dismissal statutes only if limited to those dismissals which are the procedural equivalent of defaults—i.e., those which occur because the plaintiff's attorney has failed to oppose a dismissal motion." (57 Cal.App.4th at p. 1082.) ▮ Thus, "[t]he purpose of the statute was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys. There is no evidence the amendment was intended to be a catch-all remedy for every case of poor judgment on the part of counsel which results in a dismissal." (*Huens* v. *Tatum, supra,* 52 Cal.App.4th at p. 264.)

▮ Given the foregoing construction of the attorney affidavit of fault provision of section 473, subdivision (b), we conclude that the trial court properly denied relief under this provision because the instant record shows that Bank was not deprived of its day in court. Bank did appear at the evidentiary hearing on its third party claim and offered evidence in an attempt to meet its burden of proof. Thus, the instant hearing cannot properly be characterized as the procedural equivalent of a default or a dismissal without an opportunity to be heard. The fact that the trial court at the evidentiary hearing concluded that Bank's evidence was inadmissible, or insufficient to prevail, does not bring the case within the mandatory relief provision of section 473.[6] Moreover, the instant case is clearly distinguishable from the cases cited by appellants, including *Avila* v. *Chua* (1997) 57 Cal.App.4th 860 [67 Cal.Rptr.2d 373].

In *Avila*, plaintiff's attorney erred in calendaring the due date for a response to defendants' summary judgment motion; the trial court struck plaintiff's late-filed opposition, granted the motion on the basis of the moving papers, and then denied plaintiff's motion for relief under section 473. In reversing the order denying relief and concluding that the mandatory

---

[6]As noted earlier, we are unaware of any appeal from the January 31, 1997, judgment denying the third party claim, which judgment is not before us for review. Accordingly, we do not express any opinion on the correctness of the trial court's evidentiary rulings at that hearing, or on the sufficiency of the evidence to support that judgment.

provisions of section 473 applied therein, the court stated that plaintiff lost his day in court due solely to his lawyer's failure to timely act, and the situation was "directly analogous to a default judgment: Due to counsel's late filing of crucial documents, the court decided the matter on the other parties' pleadings. There was no litigation on the merits. Appellant submitted declarations which directly contradicted respondents' most crucial proposed undisputed facts, but those declarations were not considered by the court. Appellant's response was stricken, and the matter proceeded to summary judgment and judgment as if by default." (57 Cal.App.4th at p. 868.)

Unlike the situation in *Avila*, appellants here had an opportunity to present evidence at a hearing, and did so. Appellants had their day in court. We also agree with the comments about the *Avila* case made by the court in *Garcia* v. *Hejmadi* (1997) 58 Cal.App.4th 674 [68 Cal.Rptr.2d 228], that ". . . there was no need for the court in *Avila* to resort to the mandatory portion of section 473 since the facts would have permitted the same result under *Bettencourt* [v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270 [228 Cal.Rptr. 190, 721 P.2d 71]], discussed above. Moreover the case supplies little guidance in a case such as ours where opposition is filed but is insufficient on the merits." (58 Cal.App.4th at p. 683.) For all of the foregoing reasons, we conclude that the instant judgment does not fall within the mandatory relief provision of section 473, subdivision (b), clause (2).

## III

### DISCRETIONARY RELIEF UNDER SECTION 473

Appellants contend that the trial court failed to exercise its discretion under the discretionary relief provision of section 473, subdivision (b). The contention is without merit as it is not supported by the record and applicable principles of appellate review. In *Schnabel* v. *Superior Court* (1993) 5 Cal.4th 704 [21 Cal.Rptr.2d 200, 854 P.2d 1117], in rejecting a similar argument in connection with a motion to quash, the court stated that "At the hearing on the motion to quash and in its written order, the court did not state reasons for its ruling, but summarily denied the motion. However, an 'order of the lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' " (*Id.* at p. 718.) "The burden of affirmatively demonstrating error is on the appellant. This is a general principle of appellate practice as well as an ingredient of the constitutional doctrine of reversible error." (*Fundamental Investment etc. Realty Fund* v. *Gradow* (1994) 28 Cal.App.4th 966, 971 [33 Cal.Rptr.2d 812].)

Appellants have not met their burden of establishing the trial court did not exercise its discretion under section 473. Rather, our record indicates that the court was aware of the issue, as the court expressly stated at the hearing that it had read the moving and opposition papers, both of which addressed this issue. The court also made several comments indicating that it did not consider counsel's neglect to be excusable.[7] We thus imply from the instant record, which does not contain any express findings, that the trial court impliedly concluded that Bank failed to establish "mistake, inadvertence, surprise, or excusable neglect" under the discretionary relief provision of section 473. ■ We now proceed to discuss whether the trial court abused its discretion in concluding Bank was not entitled to such relief.

■ A motion for relief under section 473 is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse thereof, the exercise of that discretion will not be disturbed on appeal. (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 897-898 [187 Cal.Rptr. 592, 654 P.2d 775].) A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief. (32 Cal.3d at p. 898.)

"The provision of section 473 which mandates relief from a judgment of dismissal or default when the motion is based on an attorney's affidavit of fault does not mandate relief from other judgments. In all other cases, relief is discretionary." *(Garcia* v. *Hejmadi, supra,* 58 Cal.App.4th at p. 681.) The pertinent provision of subdivision (b) of section 473 provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

■ "To determine whether the mistake or neglect was excusable, '. . . the court inquires whether "*a reasonably prudent person* under the same or similar circumstances" might have made the same error . . . .' *(Bettencourt* v. *Los Rios Community College Dist.* [*,supra,*] 42 Cal.3d 270, 276 . . . , italics added, citations omitted.) Thus, the mandatory provision does not create a whole new class of mistakes or acts of neglect by the attorney which

---

[7]The trial court at one point remarked that "Mr. Grossman argued the discovery motions. I made him aware expressly that something had to be turned over to the plaintiff showing that there was a balance, some kind of admissible bank record, or else they were going to have a problem with it. [¶] That was never produced. That wasn't produced in discovery and wasn't produced at the hearing."

result in the court having to grant relief. The distinction in the statute noted by the Supreme Court's use of the term 'reasonably prudent person' describes the obvious intent of the Legislature to mandate relief only from mistakes fairly imputable to the client, i.e., mistakes anyone could have made. The Legislature did not intend to eliminate attorney malpractice claims by providing an opportunity to correct all the professional mistakes an attorney might make in the course of litigating a case. This is demonstrated by the language of the statute itself, which distinguishes between the mandatory relief available to the client and the permissive relief available under the original statute to 'a party or . . . legal representative.' (§ 473, subd. (b).)" (*Garcia v. Hejmadi, supra,* 58 Cal.App.4th at p. 682.)

"Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice. [¶] An exception to this rule allows relief where the attorney's neglect, although inexcusable, was so extreme as to constitute misconduct effectively ending the attorney-client relationship. 'Abandonment' may afford a basis for relief, at least where the client is relatively free of fault, but performance which is merely inadequate will not." (*Garcia v. Hejmadi, supra,* 58 Cal.App.4th at pp. 682-683.) In *Garcia,* the court addressed the issue of whether a plaintiff who had filed inadequate opposition to a summary judgment motion was entitled to an order vacating summary judgment under section 473; in concluding that the trial court abused its discretion in vacating the summary judgment, the court explained that "Garcia's presumption that consideration of the late-filed papers, or even oral argument based upon them, would have produced a different result begs the question. The issue is not whether the original opposition was insufficient to prevail, but rather whether the reason advanced for its insufficiency was 'excusable' within the meaning of section 473. The 'reasonably prudent person standard' established by the Supreme Court in *Bettencourt, supra,* 42 Cal.3d 270, gives an attorney the benefit of such relief only where the mistake is one which might ordinarily be made by a person with no special training or skill. Obviously, an untrained person might be expected to make mistakes when performing the functions of an attorney; the acknowledged desirability of professional legal training presumes this to be so. Just as obviously, an attorney acting within his or her professional capacity is held to a different standard of care and may not be excused by section 473 from errors occurring during the discharge of strictly professional duties." (58 Cal.App.4th at p. 684.)

"The advancement of arguments is the very essence of the professional responsibilities assumed by attorneys; failure to timely make an argument

cannot, therefore, be considered a mistake permitted to an untrained 'reasonably prudent person' within the meaning of section 473." (*Garcia* v. *Hejmadi, supra*, 58 Cal.App.4th at p. 684.) Similarly, it has been stated that "[t]he mere fact that an attorney does not make a skillful presentation of a client's case will not, standing alone, usually warrant relief under section 473." (*Vartanian* v. *Croll* (1953) 117 Cal.App.2d 639, 644 [256 P.2d 1022].)

"In deciding whether counsel's error is excusable, the reviewing court looks to the nature of the mistake or neglect and whether counsel was otherwise diligent in investigating and pursuing the claim. When examining the mistake or neglect, the court inquires whether a reasonably prudent person might have made the same error under the same or similar circumstances." (*Munoz* v. *State of California* (1995) 33 Cal.App.4th 1767, 1782-1783 [39 Cal.Rptr.2d 860], citing *Bettencourt* v. *Los Rios Community College Dist., supra*, 42 Cal.3d at p. 276.)

■ In the instant case, the trial court impliedly found that under the instant circumstances, Bank's counsel's failure to list its witnesses in the trial brief when ordered by the trial court to do so, and the failure to lay a proper foundation for its documentary evidence, did not constitute excusable neglect. Bank's counsel, Kurtiss Grossman, declared that at the time he took over this matter from an attorney who left the Loeb & Loeb firm, he talked to the former attorney on the case, but that attorney did not inform Grossman of the requirement to list witnesses in the trial brief; he was very busy and the case was very complex; because the case involved clients who were overseas, it was very difficult to communicate with the clients; a live witness from the clients was not able to appear at the hearing because of the enormous expense of sending a witness to California; prior to the hearing on the third party claim, he talked with several other attorneys in his firm concerning the admission of evidence and reviewed several treatises on the admission of evidence; he did not understand that the third party claim hearing was a full-fledged evidentiary hearing and he misunderstood the procedural requirements for admitting the evidence of a security interest; as a fourth-year attorney, he had never undertaken any type of evidentiary proceeding before the third party claim hearing.

Noticeably absent from counsel's declaration is any indication of whether counsel consulted the statutes governing hearings on third party claims, or the particular Evidence Code provisions dealing with business records and authentication of writings. Moreover, although counsel declares that he "reviewed the court's transcript of the status conference," he declares that he "did not see the provision requiring prior identification of witnesses." The

trial court could have inferred that counsel did not mindfully review such transcript and the failure to note the court's order therein that witnesses be listed in the trial brief was inexcusable neglect.

The trial court also reasonably could have determined that counsel's declaration lacked specific details as to counsel's preparation for the third party claim hearing, and thus, that counsel failed properly to prepare for such hearing. The trial court then reasonably could have concluded that such failure did not constitute excusable neglect under the rationale of the court in *Garcia*, and under the standard for excusable neglect set out in *Bettencourt*. Counsel's failure to discharge routine professional duties is not excusable, nor is counsel's failure to properly prepare for the hearing the conduct of a reasonably prudent person. Even if counsel's failings are characterized as mistakes of law, no relief under section 473 is warranted as "ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief." (*Anderson* v. *Sherman* (1981) 125 Cal.App.3d 228, 238 [178 Cal.Rptr. 38].) Accordingly, appellants fail to meet their burden of establishing the trial court abused its discretion under section 473.

Because we conclude that no abuse of discretion has been shown with respect to the issue of mistake, inadvertence, or excusable neglect, we need not address other issues raised by appellants, including the issues of prejudice and estoppel to assert relief under section 473.

### DISPOSITION

The order is affirmed. Respondent is entitled to costs on appeal.

Johnson, J., and Neal, J., concurred.