[No. S100352. June 17, 2002.]

PABLO ZAMORA, Plaintiff and Respondent, v.
CLAYBORN CONTRACTING GROUP, INC., Defendant and Appellant.

**Counsel**

Weintraub Genshlea Chediak Sproul, Charles L. Post, Thomas G. Trost and Thadd A. Blizzard for Defendant and Appellant.

Glen E. Gates for Plaintiff and Respondent.

## OPINION

**BROWN, J.**—This appeal arises out of a typo. In typing up an offer to compromise pursuant to Code of Civil Procedure section 998[1] (section 998 offer), an attorney's legal assistant types the word "against" instead of the phrase "in favor of." As a result, the typed document mistakenly offers to settle the matter for a judgment *against* the attorney's client in the amount of $149,999. Not surprisingly, the opposing party jumps at the offer. We now consider whether the party who made the erroneous section 998 offer may obtain relief pursuant to the discretionary relief provision of section 473, subdivision (b), and conclude he may.

### FACTS

Pablo Zamora (Zamora), doing business as Creative Engineering and Fabrication, filed suit against Clayborn Contracting Group, Inc. (Clayborn), alleging breach of contract and other related claims. The complaint alleged that Clayborn failed to pay for road signs produced and supplied by Zamora and sought approximately $143,000 in damages plus attorney fees. Clayborn answered and filed a cross-complaint. Although the cross-complaint did not specify the amount of damages sought, Clayborn sent Zamora an invoice for approximately $157,000 before filing the cross-claim.

Less than two months before trial, Zamora's counsel mailed Clayborn a section 998 offer. Although Zamora apparently intended to offer to settle for a judgment in his favor in the amount of $149,999, the actual offer sent to Clayborn stated: "Plaintiff Pablo Zamora aka Pablo Iniguez dba Creative Engineering and Fabrication hereby offers to have judgment *taken against himself and for* defendant Clayborn Contracting Group, Inc. . . . pursuant to Section 998 of the Code of Civil Procedure for the sum of $149,999 . . . ."

Clayborn filed a notice of acceptance of the offer approximately three days after reviewing it. One week later and two days after learning about the mistake in the offer, Zamora's counsel advised the court of his intention to file a motion to set aside "the judgment based on mistake, inadvertence and excusable neglect." After obtaining an order shortening the time for hearing the motion, Zamora filed a motion to set aside the section 998 offer or to vacate entry of judgment pursuant to the discretionary relief provision of section 473, subdivision (b).

In support of the motion, Zamora submitted declarations from himself, his counsel, the legal assistant who typed the section 998 offer and other

---

[1] All further statutory references are to the Code of Civil Procedure.

litigants in related cases. Zamora averred that he *only* authorized his attorney to settle for a judgment in his favor in the amount of $149,999 and never authorized his attorney to agree to any judgment in favor of Clayborn.

Zamora's counsel declared that he, by phone, instructed his legal assistant to prepare a document offering to settle for a judgment against Clayborn in the amount of $149,999 pursuant to section 998. Zamora's counsel, per office policy, authorized his legal assistant to send the document with his stamped signature even though he had not reviewed it, because he was out of town and time was of the essence. He further stated that, before making this offer, Zamora had never offered to settle the matter for less than $150,000 *from* Clayborn. His legal assistant largely corroborated his story and claimed that she "mistakenly typed the word 'against' as opposed to the phrase 'in favor of' Pablo Zamora."

Zamora's counsel also stated that, after accepting the section 998 offer, Clayborn unilaterally cancelled depositions and took pending motions to coordinate this action with other actions and to amend the cross-complaint off calendar without informing Zamora or other interested parties. A declaration from another litigant involved in the coordination motion corroborated these statements.

In opposition, Clayborn submitted declarations claiming that it acted in good faith and believed the offer was correct as written. Clayborn claimed that the proposed amount of the settlement—$149,999—was consistent with the amount stated in its latest invoice to Zamora—approximately $157,000. Clayborn's counsel further stated that he had told Zamora's counsel that Clayborn would not give Zamora any money and had suffered significant damages due to Zamora's conduct. Finally, Clayborn identified two tax levies against Zamora for approximately $31,000, as grounds for its failure to question the validity of the offer.

After a hearing, the trial court found that Zamora's counsel made a ministerial or clerical error and granted the motion to set aside the judgment pursuant to the discretionary relief provision of section 473, subdivision (b). The Court of Appeal affirmed. After ordering the trial court to "enter judgment, nunc pro tunc as of February 17, 2000, pursuant to the section 998 offer filed that date,"[2] the court concluded that: (1) Section 473, subdivision (b) permitted relief from a judgment entered in accordance with a section 998 settlement for "mistake, inadvertence, surprise, or excusable neglect"; and (2) the trial court did not abuse its discretion by granting Zamora relief from the section 998 settlement.

We granted review.

---

[2]The trial court had never formally entered judgment in accordance with the accepted offer, as required by section 998, subdivision (b)(1).

## DISCUSSION

 As relevant here, the discretionary relief provision of section 473, subdivision (b) provides that: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." According to Clayborn, this provision applies only to involuntary judgments or dismissals; therefore, Zamora could not obtain relief from the voluntary judgment entered pursuant to his section 998 settlement under section 473, subdivision (b). We disagree.

Our analysis begins with the statutory language. (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) The discretionary relief provision of section 473, subdivision (b) applies to *any* "judgment, dismissal, order, or other proceeding." Ostensibly, this statutory language does not limit the application of the discretionary relief provision to involuntary judgments or dismissals. Indeed, our courts have interpreted the provision in this manner for over a century.

The Legislature first enacted the discretionary relief provision found in section 473, subdivision (b) in 1872, and the language of this provision has not changed appreciably since then. (See Historical Note, 15 West's Ann. Code Civ. Proc. (1979 ed.) foll. § 473, p. 96 ["As originally enacted in 1872, the section read: 'The Court . . . may, upon such terms as may be just, and upon payment of costs, relieve a party, or his legal representatives, from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect' "].) Since 1872, California courts have consistently applied the discretionary relief provision of section 473 to voluntary judgments or dismissals. For example, as early as 1901, this court affirmed an order setting aside a voluntary dismissal entered pursuant to a settlement agreement. In holding that the trial court had authority to do so under the discretionary relief provision of section 473, this court rejected Clayborn's very contention and held that a party who "consented to the dismissal to his injury, under a mistake of fact, excusable under the terms of the statute, . . . is not barred of relief." (*Palace Hardware Co. v. Smith* (1901) 134 Cal. 381, 384 [66 P. 474] (*Palace Hardware*); see also *Troxell v. Troxell* (1965) 237 Cal.App.2d 147, 151-152 [46 Cal.Rptr. 723] (*Troxell*) [holding that the statutory phrase "taken against" does not limit the discretionary relief provision of § 473 to default judgments].)

*Palace Hardware* was not an aberration. California courts have long held that "[e]ven after a voluntary dismissal with prejudice has been filed, the

trial court *has jurisdiction* to vacate the judgment of dismissal under Code of Civil Procedure section 473 where it has been entered as a result of the plaintiff's 'mistake, inadvertence, surprise, or excusable neglect.' " *(Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 21 [269 Cal.Rptr. 332] *(Basinger)*, fn. omitted.) Thus, "[a]n order or decree incorporating a settlement agreement may be set aside under section 473." *(In re Marriage of Kerry* (1984) 158 Cal.App.3d 456, 465 [204 Cal.Rptr. 660].) " 'Where justice requires it, a party in whose favor a judgment has been rendered is entitled to relief from the judgment as well as the party against whom it is rendered.' " *(Stevens v. Stevens* (1968) 268 Cal.App.2d 426, 429 [74 Cal.Rptr. 54].) In accordance with these principles, California courts have consistently held that parties may obtain relief from judgments, dismissals, or stipulations voluntarily entered into pursuant to a voluntary agreement through the discretionary relief provision of section 473.[3] In fact, Clayborn cites no majority decision to the contrary.[4]

Indeed, this long-standing interpretation of the discretionary relief provision of section 473 comports with its underlying purpose. (See *Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977 [courts may look to the purpose behind the statute in interpreting it].) "It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of

---

[3](See, e.g., *Harth v. Ten Eyck* (1941) 16 Cal.2d 829, 832-834 [108 P.2d 675] [setting aside a voluntary dismissal entered pursuant to a settlement agreement]; *County of Alameda v. Risby* (1994) 28 Cal.App.4th 1425, 1430-1431 [34 Cal.Rptr.2d 333] [denying relief from a stipulation]; *Basinger, supra,* 220 Cal.App.3d at pp. 21-23 [denying relief from a voluntary dismissal with prejudice entered pursuant to a settlement agreement]; *In re Marriage of Kerry, supra,* 158 Cal.App.3d at pp. 465-466 [vacating a stipulated judgment]; *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 488-489 [97 Cal.Rptr. 274] [denying relief from a stipulation]; *Stevens v. Stevens, supra,* 268 Cal.App.2d at pp. 429-430 [denying relief from a judgment of divorce incorporating a property settlement]; *Sanserino v. Shamberger* (1966) 245 Cal.App.2d 630, 634 [54 Cal.Rptr. 206] [denying relief from a stipulation]; *Troxell, supra,* 237 Cal.App.2d at pp. 152-153 [denying relief from a stipulation]; *Bice v. Stevens* (1958) 160 Cal.App.2d 222, 232-233 [325 P.2d 244] *(Bice)* [setting aside a voluntary dismissal with prejudice entered pursuant to a settlement agreement]; *Robinson v. Hiles* (1953) 119 Cal.App.2d 666, 669-672 [260 P.2d 194] *(Robinson)* [same]; *Neblett v. Neblett* (1948) 88 Cal.App.2d 859, 862-863 [200 P.2d 4] [setting aside a judgment of divorce incorporating a property settlement]; *Kelsey Co. v. Spears* (1918) 37 Cal.App. 27, 32-33 [173 P. 606] *(Kelsey Co.)* [vacating a judgment entered pursuant to a settlement agreement]; but see *Huens v. Tatum* (1997) 52 Cal.App.4th 259, 266 [60 Cal.Rptr.2d 438] *(Huens)* (conc. opn. of Blease, J.).)

[4]*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058 [267 Cal.Rptr. 457], does not support Clayborn's interpretation. In *Philippine Export,* the Court of Appeal refused to vacate a stipulated judgment entered pursuant to a settlement agreement because the moving party did not allege "carelessness or inadvertence." *(Id.* at p. 1076.) The court did not hold that discretionary relief under section 473 was unavailable as a matter of law.

legal controversies upon their merits." (*Benjamin v. Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 525 [190 P.2d 593] (*Benjamin*).) Thus, "the provisions of section 473 of the Code of Civil Procedure are to be liberally construed and sound policy favors the determination of actions on their merits." (*Riskin v. Towers* (1944) 24 Cal.2d 274, 279 [148 P.2d 611, 153 A.L.R. 442].) By applying the discretionary relief provision of section 473 to judgments entered pursuant to section 998, subdivision (b)(1), we simply remain faithful to these venerable principles.

In doing so, we reject Clayborn's contention that the statutory phrase "taken against" limits the discretionary relief provision to *involuntary* judgments or dismissals. Clayborn's contention relies heavily on the analysis found in *Huens, supra,* 52 Cal.App.4th 259. We do not, however, find *Huens* persuasive in this context.

First, the *Huens* majority confined its analysis to the mandatory relief provision of section 473, subdivision (b). *Huens* therefore has no bearing on our interpretation of the discretionary relief provision. Indeed, the same Court of Appeal has subsequently limited *Huens* to the mandatory relief context and applied the discretionary relief provision to a *voluntary* dismissal entered with the consent of the attorney for the party seeking relief. (See *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 609-610 & fn. 4 [109 Cal.Rptr.2d 256] (*Pietak*).) To the extent the majority in *Huens* suggests that the "use of the word 'against' " limits the discretionary relief provision of section 473, subdivision (b) to "*involuntary* dismissals," we disagree. (*Huens, supra,* 52 Cal.App.4th at p. 264.) Given its plain meaning, the word "against" indicates nothing about the voluntariness of any action. (See Webster's Collegiate Dict. (10th ed. 1993) p. 21 (Webster's) [against means "in opposition or hostility to," "contrary to"].) In any event, the Court of Appeal that issued *Huens* has subsequently held that *Huens* merely "construed the word 'dismissal' as having a limited meaning in the context of the mandatory provision of section 473[, subdivision] (b) . . . ." (*English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 147 [114 Cal.Rptr.2d 93].)

Second, the construction of the verb "taken" found in Justice Blease's concurring opinion in *Huens* is not persuasive. With no citation, Justice Blease contends the verb "taken" as used in the discretionary relief provision "implies that the adverse action must be involuntary." (*Huens, supra,* 52 Cal.App.4th 259, 266 (conc. opn. of Blease, J.).) This contention is, however, questionable. (See, e.g., Webster's, *supra,* p. 1201 ["take" may mean "to receive or accept whether willingly or reluctantly"].) Moreover, the contention appears erroneous because section 998, subdivision (b) uses the

verb "taken" in reference to a judgment entered voluntarily pursuant to a section 998 settlement. (§ 998, subd. (b) ["any party may serve an offer in writing upon any other party to the action to allow judgment to be *taken . . . in accordance with the terms and conditions stated at that time*" (italics added)].) Because the Legislature has used the verb "taken" in conjunction with a voluntary judgment, we doubt it intended the verb to limit the discretionary relief provision to involuntary dismissals.

■ The recent addition of a mandatory relief provision to section 473 for attorney fault also does not dictate a contrary result. Under this provision, "the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b), italics added.) The purpose of this provision "was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys." (*Huens, supra,* 52 Cal.App.4th at p. 264.) Thus, the Legislature created a narrow exception to the discretionary relief provision for default judgments and dismissals. (See *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 681 [68 Cal.Rptr.2d 228] (*Garcia*).)

■ In enacting this exception, the Legislature, however, made no changes to the discretionary relief provision of section 473, and the legislative history indicates no intent to alter the scope of this provision. Indeed, the Legislature has *never* substantively altered the statutory language at issue here despite the long line of California cases permitting discretionary relief from judgments entered pursuant to a settlement agreement (see *ante,* at p. 255, fn. 3), even though it has amended section 473 many times. Thus, the Legislature has apparently adopted this long-standing interpretation of the provision. (See *People v. Daniels* (1969) 71 Cal.2d 1119, 1128 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677] [" 'repeated *reenactment* of a statute' " following judicial interpretation of that statute suggests legislative adoption of that interpretation].)

Having established that Zamora may avail himself of the discretionary relief provision of section 473, subdivision (b), we now consider whether the trial court properly applied it. ■ "A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse." (*Pietak, supra,* 90 Cal.App.4th at p. 610.) " '[T]hose

affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.' " (*Lynch v. Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636], quoting *Griffith Co. v. San Diego College for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].) ■ As explained below, we conclude the trial court did not abuse its discretion by granting Zamora relief.

■ "A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief." (*Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1399 [72 Cal.Rptr.2d 188].) In determining whether the attorney's mistake or inadvertence was excusable, "the court inquires whether 'a reasonably prudent *person* under the same or similar circumstances' might have made the same error.' " (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71], italics added.) In other words, the discretionary relief provision of section 473 only permits relief from attorney error "fairly imputable to the client, i.e., mistakes anyone could have made." (*Garcia, supra,* 58 Cal.App.4th at p. 682.) "Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice." (*Ibid.*)

The party seeking relief under section 473 must also be diligent. (See *Benjamin, supra,* 31 Cal.2d at pp. 527-528.) Thus, an application for relief must be made "within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." (§ 473, subd. (b).)

Where the mistake is excusable and the party seeking relief has been diligent, courts have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue. (See, e.g., *Robinson, supra,* 119 Cal.App.2d at pp. 671-673; *Fickeisen v. Peebler* (1946) 77 Cal.App.2d 148, 151-152 [174 P.2d 883].) In such cases, the law "looks with [particular] disfavor on a party who, regardless of the merits of his cause, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary." (*Reed v. Williamson* (1960) 185 Cal.App.2d 244, 248 [8 Cal.Rptr. 39].)

Here, the trial court reasonably concluded that the mistake made by Zamora's counsel was excusable. The erroneous substitution of the word "against" for the phrase "in favor of" is a clerical or ministerial mistake that could have been made by anybody. While counsel's failure to review the document before sending it out was imprudent, we cannot say that his imprudence rendered the mistake inexcusable under the circumstances. Indeed, appellate courts have routinely affirmed orders vacating judgments based on analogous mistakes made by an attorney or his or her staff. For example, courts have set aside judgments where: (1) The attorney mistakenly checked the "with prejudice" box instead of the "without prejudice" box (see *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231, 1237 [283 Cal.Rptr. 878] (*Romadka*)); (2) an associate misinterpreted the instructions of the lead attorney and gave incorrect information at a hearing (see *Bergloff v. Reynolds* (1960) 181 Cal.App.2d 349, 358-359 [5 Cal.Rptr. 461]); and (3) the attorney's secretary lost the answer to be filed (see *Alderman v. Jacobs* (1954) 128 Cal.App.2d 273, 275-276 [274 P.2d 930]).

In addition, Zamora was diligent in seeking relief, and Clayborn suffered no apparent prejudice. Finally, the record suggests that Clayborn took unfair advantage of the mistake. We find it hard to believe that Clayborn had no inkling that the section 998 offer was a mistake when the uncontroverted record established that: (1) Zamora's complaint sought over $140,000 in damages; (2) Zamora had never offered to settle for less than $150,000 from Clayborn prior to making the offer; (3) the section 998 offer proposed to settle the matter for almost the same amount ($149,999) as Clayborn's entire claim for damages (approximately $157,000); and (4) Clayborn knew Zamora was having financial difficulties and had failed to pay approximately $31,000 in tax levies. Clayborn's rush to get approval of the settlement and its abrupt cancellation of depositions and hearings on pending motions with no notice to the parties involved cast further doubt on its claim of innocence. Under these facts, the trial court did not abuse its discretion by granting relief to Zamora pursuant to section 473, subdivision (b).

Contrary to the assertions of Clayborn, both *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658 [73 Cal.Rptr.2d 242] (*Pazderka*) and *Premium Commercial Services Corp. v. National Bank of California* (1999) 72 Cal.App.4th 1493 [86 Cal.Rptr.2d 65] are factually distinguishable. In both *Pazderka* and *Premium Commercial Services*, the Courts of Appeal held that the trial court abused its discretion by setting aside a section 998 settlement because the erroneous omission of a provision for attorney fees and costs was "not the type of mistake 'ordinarily made by a person with no

special training or skill.'" (*Pazderka*, at p. 671; see also *Premium Commercial Services*, at pp. 1496-1497.) By contrast, the inadvertent clerical error alleged here is such a mistake.[5]

■ The observation in *Pazderka* that courts will not set aside a valid settlement agreement absent "fraud or undue influence" does not compel a different result. (*Pazderka, supra*, 62 Cal.App.4th at p. 672.) *Pazderka* merely recognized the long-standing rule that "a judgment or order may be set aside on the ground of [extrinsic] fraud, [extrinsic] mistake or lack of jurisdiction, independent of the remedy found in section 473, Code of Civil Procedure, when the application is seasonably made and the fraud or misrepresentation is alleged and proved." (*Estate of Sankey* (1926) 199 Cal. 391, 407 [249 P. 517].) Indeed, the remedy afforded under section 473 "is merely concurrent with the remedy afforded by equity under proper circumstances." (*Winn v. Torr* (1938) 27 Cal.App.2d 623, 627 [81 P.2d 457].) ■ Thus, neither *Pazderka* nor contract law limits section 473 relief from judgments entered pursuant to a section 998 settlement to cases involving fraud or undue influence.

Finally, in reaching this holding, we do not offend the public policies favoring the private resolution of civil disputes. Although the law favors settlements (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437]), it only favors *authorized* settlements. "An attorney does not, *without specific authorization*, possess the power or authority to bind his client to a compromise settlement of pending litigation." (*Bice, supra*, 160 Cal.App.2d at pp. 231-232, italics added.) Where, as here, an attorney makes a clerical mistake that results in a settlement on terms clearly not authorized by his client, the public policy favoring settlements has no force. (See *Romadka, supra*, 232 Cal.App.3d at p. 1237.) Rather, the client, in the interests of justice, should be "given an opportunity to have" his "respective rights . . . tried and adjudicated." (*Kelsey Co., supra*, 37 Cal.App. at p. 33; see also *Palace Hardware, supra*, 134 Cal. at p. 384; *Bice*, at pp. 233-234.)

Our holding also does not circumvent long-standing principles of contract law. Even if, as Clayborn contends, Zamora was limited to the contractual defense of unilateral mistake, ample evidence supports the trial court's decision. As noted above (see *ante*, at p. 259), the undisputed facts strongly suggest that Clayborn "had reason to suspect that a mistake had been made" (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 280 [26 Cal.4th 1060a, 109 Cal.Rptr.2d 807, 27 P.3d 702]). Moreover, even assuming Clayborn had no

---

[5]In recognizing this distinction, we express no opinion as to whether *Pazderka* or *Premium Commercial Services* was correctly decided.

knowledge of Zamora's mistake, enforcement of the section 998 settlement would still arguably be unconscionable. (See *Donovan*, at p. 281 [rescission for unilateral mistake may be appropriate "where 'the effect of the mistake is such that enforcement of the contract would be unconscionable' "].) Thus, requiring Zamora to file a separate action in order to rescind his section 998 offer would not promote the sanctity of contract law. It would only waste judicial resources.

In any event, we are confident trial courts will exercise this discretionary power to vacate judgments entered pursuant to a settlement agreement both carefully and sparingly. We suspect most, if not all, courts will see through claims of buyer's remorse or breach of contract. (See, e.g., *Basinger, supra,* 220 Cal.App.3d at p. 23 [holding that the alleged breach of a settlement agreement was not grounds for relief under § 473].) Indeed, courts have been exercising this power for over a century with no apparent ill effects. (See *ante*, at pp. 254-256.) Most cases still settle, and courts rarely set aside settlement agreements. Our holding today should not change that.

## DISPOSITION

We affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.