[No. A078278. First Dist., Div. Two. Mar. 25, 1998.]

FRANTI PAZDERKA et al., Plaintiffs and Appellants, v.
CABALLEROS DIMAS ALANG, INC., Defendant and Respondent.

660

662

COUNSEL

Ronald D. Schivo for Plaintiffs and Appellants.

Jack P. Dougherty for Defendant and Respondent.

OPINION

LAMBDEN, J.—Caballeros Dimas Alang, Inc. (CDA) made an offer to compromise to Franti and Julie Pazderka (Pazderkas) pursuant to Code of Civil Procedure section 998, which the Pazderkas accepted. (All further unspecified code sections refer to the Code of Civil Procedure.) The Pazderkas presented the signed agreement to the clerk of the superior court, who entered judgment pursuant to section 998. The Pazderkas, thereafter, successfully moved for an award of attorneys' fees. CDA filed a motion which, among other things, requested reconsideration of the award for attorneys' fees, relief from judgment, and rescission.

The trial court granted reconsideration and vacated the judgment, and the Pazderkas appeal from the order granting this relief. The Pazderkas contend that the trial court did not have jurisdiction, because CDA had filed a notice of appeal prior to the trial court's issuing its decision. Additionally, the Pazderkas argue that the trial court had no jurisdiction to grant reconsideration, and it abused its discretion in vacating the judgment, because CDA failed to present facts or law to support such relief.

Thus, the questions posed by this appeal are: Is an order pursuant to a section 998 settlement appealable? Since we conclude that it is not, filing a notice of appeal from such an order does not divest the trial court of jurisdiction over the issue. Second, is counsel's mistake of incorrectly presuming the offer to compromise includes attorneys' fees the type of mistake a court can remedy by granting reconsideration or vacating the judgment and granting rescission? We conclude it is not.

## BACKGROUND

The Pazderkas leased commercial real property from CDA, pursuant to a lease dated August 1, 1995. Several disputes between the parties ensued, and the Pazderkas filed a complaint against CDA on March 4, 1996; CDA answered and filed a cross-complaint. (Most of the facts related to the underlying disputes are irrelevant to the issues raised by this appeal, and we only discuss those facts germane to the questions before us.)

In June 1996, outside the presence of counsel, the parties discussed settlement. CDA stated that it offered to pay $15,000 if there were no attorneys' fees and $8,000 if lawyers were needed.

Ten days prior to the trial date, on January 23, 1997, CDA served the Pazderkas with an offer to compromise under section 998. The offer stated that CDA would pay $15,000 on the complaint and take nothing on the cross-complaint. The offer remained silent on the issue of attorneys' fees. The Pazderkas unconditionally accepted the offer on January 27, 1997.

On February 24, 1997, CDA sent a settlement release agreement by facsimile, indicating that each party would bear his or her own costs and attorneys' fees. Counsel for the Pazderkas asserts that he never read or agreed to this "new" agreement.

The Pazderkas presented the clerk of the superior court with the compromise agreement, and the clerk entered judgment pursuant to section 998 on February 26, 1997.

On March 6, 1997, the Pazderkas moved for an award of attorneys' fees under the attorneys' fees clause in the lease. They maintained that they were the prevailing party under section 1032, and thereby entitled to fees under section 1021. Their memorandum of costs was filed March 12, 1997. After a hearing on the motion on March 21, the trial court awarded $29,662.50 in attorneys' fees to the Pazderkas.

The Pazderkas claim that CDA also filed a motion for attorneys' fees and the court denied this request. The record, however, does not contain such a motion and the court's order does not mention a cross-motion for attorneys' fees.

Both parties filed motions to tax costs.

On April 9, 1997, CDA filed a motion, in the alternative, for: reconsideration pursuant to section 1008, relief from judgment pursuant to section 473, rescission, determination of prevailing party, and attorneys' fees. In support of the motion, CDA submitted a declaration of Frank Rodino (Rodino), the volunteer director of CDA. Rodino stated that he was hospitalized for an emergent medical condition on March 14, 1997; therefore, he was unable to provide a declaration to accompany CDA's opposition to the Pazderkas' request for attorneys' fees. He also declared that he understood and intended the section 998 offer to include the issues of attorneys' fees and costs. Counsel for CDA submitted a declaration asserting that he mistakenly believed that the language to " 'compromise the issues,' was intended to include the issues of attorney fees and costs."

The court heard the motion on April 24, 1997, and took the matter under submission. The court had denied CDA's motion to tax costs on April 15, 1997, but it took under submission the Pazderkas' motion to tax costs.

On April 25, 1997, CDA filed its notice of appeal, because it was concerned that the 60-day time limit for appealing from the clerk's judgment would expire.

The trial court ruled on CDA's motion on May 5, 1997. It granted reconsideration and rescission, and vacated the judgment on the basis of mistake. It also granted the Pazderkas' motion to tax costs. The trial court found the following: "Upon further review of the record, this Court concludes that Defendants intended their § 998 offer to be a compromise of all issues including attorney's fees and costs. Plaintiff was apprised of Defendants' intent when Defendants faxed a release and settlement agreement to Plaintiffs' counsel on February 24, 1997 in which parties are to bear their

own attorney's fees and costs. Plaintiffs' counsel failed to apprise Defendants of Plaintiffs' understanding that the § 998 offer did not relieve Defendants' obligations for attorney's fees and costs before the Entry of Judgment by the clerk.

"Based on the foregoing, this Court HEREBY VACATES the Clerk's judgment entered on 2/26/1997 pursuant to C.C.P. § 473(b) based on mistake and surprise on the part of Defendants' counsel. Furthermore, this Court FINDS that the § 998 offer and its acceptance to be RESCINDED. As such, the determination of a prevailing party is premature.

"Defendants' Motion for Reconsideration is GRANTED. The Order Granting Plaintiffs' Motion for Attorney's Fees dated March 26, 1997 is HEREBY VACATED. Defendants' Motions for a determination of prevailing party and attorney's fees are ORDERED off calendar as being premature. Plaintiffs' Motion to Tax Costs Memorandum filed by Defendants is GRANTED since it is premature."

On May 12, 1997, the Pazderkas cross-appealed from the trial court's order dated May 5, 1997. CDA filed a notice of withdrawal of appeal on May 20, 1997, "on the grounds that the judgment is vacated and the appeal is thereby moot." The Pazderkas amended their notice of cross-appeal to state a direct appeal.

DISCUSSION

I. *Jurisdiction and the Appealability of a Section 998 Judgment Order*

 The first issue we must consider is whether the trial court retained jurisdiction over the matters before it after CDA filed its notice of appeal from the clerk's judgment. In the notice of appeal, CDA stated it was appealing "the judgment, entered on February 26, 1997, and post-judgment orders, in the above-entitled matter." The Pazderkas contend that the trial court lost jurisdiction over these issues.

Section 916 specifies that the perfecting of an appeal "stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order. [¶] (b) When there is a stay of proceedings other than the enforcement of the judgment, the trial court shall have jurisdiction of proceedings related to the enforcement of the judgment as well as any other matter embraced in the action and not affected by the judgment or order appealed from."

It is well settled that decisions regarding attorneys' fees are collateral to the enforcement of the judgment (see, e.g., *Bankes* v. *Lucas* (1992) 9 Cal.App.4th 365, 368-369 [11 Cal.Rptr.2d 723]). Therefore CDA's appeal from the attorneys' fee order had no impact on the trial court's retention of jurisdiction.

■ Generally, however, an appeal from a judgment order strips the trial court of any authority to rule on the judgment. (See *Sacks* v. *Superior Court* (1948) 31 Cal.2d 537, 540 [190 P.2d 602] ["A duly perfected appeal divests the trial court of further jurisdiction in the cause and of power to act other than with respect to specified excepted or collateral matters . . . ."]; *Betz* v. *Pankow* (1993) 16 Cal.App.4th 931, 937-938 [20 Cal.Rptr.2d 841] (*Betz*); *Copley* v. *Copley* (1981) 126 Cal.App.3d 248, 298 [178 Cal.Rptr. 842] ["[d]uring the pendency of an appeal, the trial court is without power to hear a motion to vacate [a] judgment from which an appeal has been taken . . . ."].) The *Betz* court articulated the reasoning underlying this rule: "to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided." (*Betz, supra,* 16 Cal.App.4th at pp. 937-938.) "The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (*Ibid.*)

■ "[N]o appeal can be taken except from an appealable order or judgment, as defined in the statutes and developed by the case law . . . ." (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 613 [311 P.2d 8].) Section 904.1 states that an appeal may be taken from a judgment, except from among other things, an interlocutory judgment. Therefore, final judgments, "as 'developed by the case law' " (*Efron* v. *Kalmanovitz* (1960) 185 Cal.App.2d 149, 154 [8 Cal.Rptr. 107]), are appealable, but "[i]t is the substance and effect of the court's order or judgment and not the label" which determines whether the party can appeal (*Art Movers, Inc.* v. *Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645 [4 Cal.Rptr.2d 689]).

Simply because the order is a final judgment does not necessarily entitle a party to appellate review. Thus, for example, a party cannot appeal from a judgment to which the party has stipulated as part of a settlement (see, e.g., *Reed* v. *Murphy* (1925) 196 Cal. 395, 399 [238 P. 78]; *Papadakis* v. *Zelis* (1991) 230 Cal.App.3d 1385, 1387 [282 Cal.Rptr. 18]).

■ Although not addressed by the Pazderkas or CDA, we must consider whether CDA could appeal from the section 998 judgment. If a section 998 judgment order is nonappealable, the appeal was never perfected and the trial court retained jurisdiction over the issue.

■ Just as a stipulated judgment differs markedly from other types of judgment, a section 998 judgment has unique characteristics. After a party signs the offer to compromise, the signed agreement may be presented to the superior court clerk who may enter judgment. (§ 998, subd. (b)(1) ["If the offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly. . . ."].) At no time during the entire process leading to entry of a section 998 judgment does a judge or jury ever consider the validity of the agreement. " 'Compromise' connotes mutual concessions; it reflects the settling parties' temporal resolution of the risks of suit as between them. A compromise agreement does not as such constitute an adjudication of either liability or damages. [Citations.]" (*Milicevich* v. *Sacramento Medical Center* (1984) 155 Cal.App.3d 997, 1004 [202 Cal.Rptr. 484].)

■ Section 998 specifies the procedure used to effect judgment, but the statute is silent on a number of issues. (See *Poster* v. *Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270-271 [276 Cal.Rptr. 321, 801 P.2d 1072] (*Poster*).) The statute does not explain the procedure to be used to challenge the clerk's entry of judgment. Additionally, it does not reveal whether the Legislature intended to permit a party to appeal from such an order.

Although the express language of the statute provides little assistance, we conclude that permitting an appeal would reduce judicial efficiency. An appeal from a section 998 judgment order would be meaningless, because there would be no record for this court to review. Our Supreme Court has held that there can be no appeal from the clerk's entry of default, because it is a ministerial act which precedes the actual judgment. (*Rappleyea* v. *Campbell* (1994) 8 Cal.4th 975, 981 [35 Cal.Rptr.2d 669, 884 P.2d 126].) Here, the ministerial act and actual judgment are concurrent, but, unless the contract was void on its face, this court would have nothing upon which to base its conclusion.

Permitting a party to appeal from a section 998 judgment order "would contravene the general rule that 'in the absence of compelling analogous case law or persuasive language in the statutes, the rule should be adopted which best serves the efficient and proper administration of the courts.' [Citation.]" (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 383 [205 Cal.Rptr. 880].) It is axiomatic that the trial court is the proper place for making factual decisions, and our role is limited to reviewing its decision for error, abuse of discretion, or substantial evidence. Thus, if the trial court has taken no action, we have nothing to review.

We conclude that the appropriate procedure to challenge a section 998 judgment is to request the trial court to vacate the judgment pursuant to

section 473. The trial court can then make findings when the parties submit their evidence and declarations in support of their positions.

■ Although we conclude that the parties waive any right to appeal from the judgment entered by the clerk, they do not waive their right to appeal the trial court's ruling regarding setting aside the agreement. (Cf. *Rooney* v. *Vermont Investment Corp.* (1973) 10 Cal.3d 351, 359 [110 Cal.Rptr. 353, 515 P.2d 297] [A settlement stipulation results in the waiver of any right to appeal from any judgment entered under the stipulation, but it does "not preclude an appeal to determine whether or not the judgment was authorized by the stipulation. [Citation.]"]; see also *Reed* v. *Murphy* (1925) 196 Cal. 395, 399 [238 P. 78].) Ordinarily, a party cannot appeal from an order to vacate the judgment, if the underlying order is not appealable. This rule prevents piecemeal appeals which would be oppressive and costly. (See, e.g., *Art Movers, Inc.* v. *Ni West, Inc., supra,* 3 Cal.App.4th at p. 645 ["[O]ptimal appellate review is achieved by allowing appeals only after the entire action is resolved in the trial court."].) The section 998 judgment order is not interlocutory, and the rule barring piecemeal appeals has no applicability.

■ Denying a motion to vacate under section 473 is also generally nonappealable. Courts, however, have carved out an exception to this rule: A party may appeal when the order to vacate denies a motion to set aside a discretionary dismissal. "A party seeking under section 473 to relieve himself of a dismissal injects into the case new elements of mistake, inadvertence, surprise and excusable neglect. Newly revealed facts, or the hitherto unrevealed impact of known facts, may demonstrate that the moving party was effectually deprived of a meaningful opportunity to defend against the original motion. These newly revealed circumstances may also persuade the trial court that the dismissal should not have been ordered, that it would not have been ordered had the plaintiff an opportunity to present the circumstances to the court in the first instance. Thus, the discretion of the trial court in disposing of the motion to vacate will be affected or controlled by facts not before it on the original hearing [citation]; and the action of the appellate court will be based upon a record not available to the plaintiff had he appealed from the dismissal itself." (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-389 [38 Cal.Rptr. 693]; see also *Peltier* v. *McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1815 [41 Cal.Rptr.2d 182].)

■ Similarly, the record after a motion to vacate a section 998 judgment will include new evidence. Indeed, such a motion provides the court with its first opportunity to consider any evidence and legal argument. "[A]n appeal from an order refusing to vacate a judgment will lie when the record

available to the appellate court on such appeal raises issues which are not disclosed or could not be disposed of on appeal from the judgment itself. [Citations.]" (*Rooney* v. *Vermont Investment Corp., supra,* 10 Cal.3d at p. 359.) Thus, we conclude that a party may appeal from the order denying a motion to vacate a section 998 judgment.

## II. *The Trial Court Abused Its Discretion in Granting Relief*

■ We now turn to the merits of the Pazderkas' appeal from the order reconsidering the award of attorneys' fees and vacating the judgment (and granting rescission). We review these issues using the abuse of discretion standard. (See, e.g., *Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1602 [265 Cal.Rptr. 719]; *Gilberd* v. *AC Transit* (1995) 32 Cal.App.4th 1494, 1500, fn. 2 [38 Cal.Rptr.2d 626] (*Gilberd*).)

### A. *Section 1008*

■ The Pazderkas argue that the trial court ignored the jurisdictional requirements of section 1008 when it granted the motion for reconsideration, and they cite our decisions of *Gilberd, supra,* 32 Cal.App.4th 1494 and *Crotty* v. *Trader* (1996) 50 Cal.App.4th 765 [57 Cal.Rptr.2d 818], as well as a depublished opinion from Division Three (*Ford Motor Co.* v. *Superior Court**\* (Cal.App.)), which is not good law. Consistent with our opinions in *Gilberd, Garcia* v. *Hejmadi* (1997) 58 Cal.App.4th 674 [68 Cal.Rptr.2d 228] (*Hejmadi*), and *Baldwin* v. *Home Savings of America* (1997) 59 Cal.App.4th 1192 [69 Cal.Rptr.2d 592] (*Baldwin*), we find the court improperly granted reconsideration.

Section 1008 provides, in pertinent part, the following: "(a) When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. [¶] . . . [¶] (e) This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider

---

*Reporter's Note: Opinion (A066781) deleted upon direction of Supreme Court by order dated October 5, 1995.

any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section."

"According to the plain language of the statute, a court acts in excess of jurisdiction when it grants a motion to reconsider that is not based upon 'new or different facts, circumstances, or law.' " (*Gilberd, supra,* 32 Cal.App.4th at p. 1500.) Here, no new facts or law were offered.

With regard to new facts, " ' "the party seeking reconsideration must provide not only new evidence *but also a satisfactory explanation for the failure to produce that evidence at an earlier time.*" ' " (*Baldwin, supra,* 59 Cal.App.4th at p. 1198, quoting *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1012-1013 [183 Cal.Rptr. 594].) The only possible "new facts" offered were presented in the declarations of CDA's counsel and Rodino. Counsel for CDA stated that he mistakenly believed the section 998 offer included the issues of attorneys' fees and costs. This statement did not disclose new facts, but merely asserted counsel's mistake. A mistake based on (1) ignorance of the law or (2) imprecision in drafting the offer is not a proper basis for reconsideration. (See *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 671 [186 Cal.Rptr. 589, 652 P.2d 437] (*Folsom*) [". . . an agreement silent as to costs and fees does not create a bar to either a cost bill or a motion" for attorneys' fees]; *Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 264 [155 Cal.Rptr. 516] [party cannot claim compromise offer precludes the award of costs when counsel failed to draft the offer with precision].)

Similarly, Rodino declared that he intended the offer to include attorneys' fees, and he failed to provide evidence regarding this intent at the first hearing on attorneys' fees because of his illness. We need not consider whether Rodino's statement regarding his illness provided a satisfactory explanation for failing to produce the evidence of his intent at the hearing on attorneys' fees. Rodino's declaration failed to raise any new facts to furnish the court with jurisdiction to reconsider the attorneys' fee issue. The facts remained that the offer did not expressly include attorneys' fees, because counsel for CDA made a mistake.

Thus we conclude that CDA failed to present any new facts or law, and the trial court lacked jurisdiction to reconsider the order regarding attorneys' fees.

## B. *Section 473, Subdivision (b)*

■ The Pazderkas also contend that the court abused its discretion in granting the motion to set aside pursuant to section 473, subdivision (b), because intrinsic mistake by CDA's counsel cannot be grounds to set aside the judgment. (See, e.g., *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 472-473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) Further, the legislative policy of promoting settlement, which underlies section 998 (see *Poster, supra,* 52 Cal.3d at pp. 270-272), would be hindered if the court vacated these judgments to relieve attorneys for their intrinsic mistakes.

Section 473, subdivision (b), provides in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . ." When determining whether the trial court has the discretion to grant relief, " '. . . the court inquires whether "a *reasonably prudent person* under the same or similar circumstances" might have made the same error . . . .' [Citation.]" (*Hejmadi, supra,* 58 Cal.App.4th at p. 682, citing *Bettencourt* v. *Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276 [228 Cal.Rptr. 190, 721 P.2d 71].) "The 'reasonably prudent person standard' . . . gives an attorney the benefit of such relief only where the mistake is one which might ordinarily be made by a person with no special training or skill." (58 Cal.App.4th at p. 684.) Here, counsel for CDA mistakenly failed to include attorneys' fees and costs in the offer to compromise, which is not the type of mistake "ordinarily made by a person with no special training or skill."

Not only is this the type of mistake that both the Supreme Court and we have held should not be provided relief under section 473, subdivision (b), the trial court improperly injected contract law principles when it granted relief. Principles of contract law govern section 998 offers as long as general contract law principles "neither conflict with the statute nor defeat its purpose." (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) Permitting the court to unravel such agreements based on mistake or evidence of no intent, as the trial court did here, would contravene the policy objectives of section 998.

Section 998 only settles those issues which would have been resolved at the trial. (*Folsom, supra,* 32 Cal.3d at p. 677.) Costs and attorneys' fees are authorized solely by statute, and are incident of the judgment unless expressly part of the judgment. (*Ibid.*) Here, counsel drafted the offer which became the judgment, and the judgment was silent on the issue of attorneys' fees.

The trial court set aside the judgment and granted the contract remedy of rescission because it ruled CDA intended for the offer to include attorneys' fees. The court found that the Pazderkas were aware of CDA's mistake once they received the release form. However, once an offer is accepted under section 998, the requirements under the statute have been met. The date of entry of the clerk's judgment and the postacceptance conduct of counsel are irrelevant to determining whether an enforceable agreement existed under section 998. Even if the prior negotiations indicated that CDA had made a mistake, the Pazderkas had no duty to apprise counsel for CDA that an offer must expressly include attorneys' fees.

Although our conclusion may seem harsh, it will advance the clear purpose of section 998, which is to encourage the settlement of lawsuits prior to trial (*T. M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at p. 280). If courts could set aside compromise agreements on the grounds of mistake, section 998 judgments would spawn separate, time-consuming litigation. It bears repeating: Section 473, subdivision (b), was not intended to permit attorneys "to escape the consequences of their professional shortcomings" (*Hejmadi, supra,* 58 Cal.App.4th at p. 685) or to insulate them from malpractice claims.

Our conclusion is consistent with the Supreme Court's holding that a " 'valid compromise agreement has many attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy.' (*Shriver* v. *Kuchel* (1952) 113 Cal.App.2d 421, 425 [248 P.2d 35].)" (*Folsom, supra,* 32 Cal.3d at p. 677.) Here, there is no evidence of fraud or undue influence; thus, the court abused its discretion in vacating the judgment and granting rescission.

### DISPOSITION

We reverse the order vacating the judgment, granting rescission, and granting reconsideration. The Pazderkas are awarded costs on appeal.

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied April 24, 1998, and respondent's petition for review by the Supreme Court was denied June 17, 1998. Baxter, J., was of the opinion that the petition should be granted.