[No. B117955. Second Dist., Div. Five. June 23, 1999.]

PREMIUM COMMERCIAL SERVICES CORP., Plaintiff and Appellant,
v.
NATIONAL BANK OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Greenberg Glusker Fields Claman & Machtinger and Garrett L. Hanken for Plaintiff and Appellant.

Clark & Trevithick, Philip W. Bartenetti and Judith Ilene Bloom for Defendant and Respondent.

## OPINION

**ARMSTRONG, J.**—Appellant Premium Commercial Services Corp. (Premium) sued respondent National Bank of California (the Bank) for breach of contract and other causes of action. The Bank made an offer under Code of Civil Procedure[1] section 998 to settle the case for $201,000. Premium accepted. However, before judgment was entered, the Bank moved to set aside the settlement. The motion was granted and the case proceeded to trial. The jury found for Premium on causes of action for breach of contract, negligence, and account stated, and awarded damages in the amount of $348,000. The trial court granted the Bank's motion for judgment notwithstanding the verdict and for new trial.

■ On this appeal, Premium first contends that the trial court erred in setting aside the section 998 settlement. We agree, and thus need not reach Premium's contentions regarding the posttrial orders. We reverse the posttrial orders and remand the case to the trial court with directions to enter judgment in favor of Premium in the amount of $201,000.

### Factual Background

Prior to trial, on February 28, 1997, the Bank made an offer under section 998, that judgment be taken against it in the amount of $201,000. The offer was accepted by Premium on March 6, 1997. On March 11, the Bank paid Premium that sum.

However, the Bank shortly made a motion under section 473, seeking to set aside the settlement on the ground that through mistake, inadvertence, and excusable neglect, the offer excluded a key term, that each party would bear its own costs and fees. Declarations attached to the motion set forth the facts: The lawyer who managed the litigation department of the firm which represented the Bank told another lawyer in the firm to prepare the section 998 offer. That lawyer did so, using a form in a Continuing Education of the Bar book. The litigation department manager signed the offer without realizing that the form was other than his customary one, which specifies that each party will bear its own costs and attorneys' fees. The Bank's lawyers did not realize until March 12, when lead counsel on the case discussed the satisfaction of judgment with counsel for Premium, that Premium intended to seek fees and costs on various theories.

### Discussion

As the parties recognize, *Pazderka* v. *Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658 [73 Cal.Rptr.2d 242], is the case most closely on point.

---

[1]All further statutory references are to that code unless otherwise indicated.

There, a section 998 offer was made and accepted, and judgment was entered in plaintiffs' favor. Plaintiffs then successfully moved for attorneys' fees. The defendant moved for reconsideration of the fee award, relief from the judgment under section 473, and rescission. The defendant's ground for relief was that counsel had mistakenly failed to include attorneys' fees and costs in the offer to compromise. The trial court granted reconsideration and rescission, and vacated the judgment on grounds of mistake. The plaintiffs appealed. The Court of Appeal reversed.

In *Pazderka*, as in this case, relief was sought under the discretionary provisions of section 473, subdivision (b), which provide that "[t]he court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

The Court of Appeal first determined that a judgment entered pursuant to section 998 is not an appealable order and that the proper procedure to challenge such a judgment is a motion under section 473.[2] The court next concluded that the trial court's ruling setting aside the judgment was an appealable order. (62 Cal.App.4th at p. 668.) The court determined, however, that the trial court had abused its discretion in granting relief.

*Pazderka* applied the rule recited in *Garcia* v. *Hejmadi* (1997) 58 Cal.App.4th 674 [68 Cal.Rptr.2d 228]: when relief is sought on the grounds of mistake, the inquiry is whether a reasonably prudent person under the same or similar circumstances might have made the error. That standard gives an attorney the benefit of relief only where the mistake is one which might ordinarily be made by a person with no special training or skill. *Pazderka* found that the failure to provide for attorneys' fees in the offer to compromise was not such a mistake. (*Pazderka* v. *Caballeros Dimas Alang, Inc., supra,* 62 Cal.App.4th at p. 671.)

*Pazderka* also cited the rule that general contract law principles govern section 998 offers as long as those principles "neither conflict with the statute nor defeat its purpose" (*T. M. Cobb Co.* v. *Superior Court* (1984) 36

---

[2]Here, unlike *Pazderka*, no judgment based on the settlement was entered. Although the parties do not challenge the application of section 473 to the trial court proceedings here, nothing in this opinion should be construed as a finding that that statute, which allows relief from a "judgment, dismissal, order, or other proceeding" may properly be employed to obtain relief from an accepted section 998 offer to settle, or that the trial court had discretion to refuse to enter judgment based on the settlement. (See *Saba* v. *Crater* (1998) 62 Cal.App.4th 150, 153 [72 Cal.Rptr.2d 401] [entry of judgment pursuant to section 998 a merely ministerial act].)

Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338]) and held that "[p]ermitting the court to unravel such agreements based on mistake or evidence of no intent, as the trial court did here, would contravene the policy objectives of section 998.'' (*Pazderka* v. *Caballeros Dimas Alang, Inc.*, *supra,* 62 Cal.App.4th at p. 671.) *Pazderka* ended with the observation that "Our conclusion is consistent with the Supreme Court's holding that a ' "valid compromise agreement has many attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy." [Citation.]' (*Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437].) Here, there is no evidence of fraud or undue influence; thus, the court abused its discretion in vacating the judgment and granting rescission." (*Pazderka, supra,* at p. 672.)

■ The Bank does not argue that *Pazderka* was wrongly decided, or that it is inapplicable to this case. Instead, the Bank argues that Premium cannot raise this issue on appeal, having failed to seek writ review of the trial court order setting aside the settlement. In support, the Bank cites *Reid* v. *Balter* (1993) 14 Cal.App.4th 1186 [18 Cal.Rptr.2d 287], which concerned a party's failure to seek writ review of a trial court order denying a motion to dismiss for failure to prosecute. The Bank argues that the facts here are analogous to those in *Reid*, and that for the policy reasons cited in that case, we should find waiver here.

In *Reid*, the plaintiffs' case was dismissed when they failed to attend a status conference. Sixteen months later, the plaintiffs moved to set the dismissal aside. The trial court granted the motion. The defendants then filed a motion to dismiss based on lack of prosecution. That motion was denied. The case proceeded to trial and the plaintiffs obtained a judgment. The defendants appealed, contending that the dismissal should not have been set aside and that their motion to dismiss should have been granted. The Court of Appeal found that the original dismissal order was void, since the plaintiffs had not had notice, and that the defendants had not made a showing that they were prejudiced by the denial of their motion to dismiss for lack of prosecution. (14 Cal.App.4th at p. 1195.)

The court then found an additional reason, based on "a strong public policy," to deny relief to the defendants: the defendants had not sought pretrial review of the order denying their motion to dismiss for lack of prosecution, but had let the case proceed to trial, "thereby expending the trial court's, the plaintiffs', and their own resources in both trial and posttrial

proceedings, proceedings which defendants now contend should never have taken place. [¶] While the discretionary dismissal statute was enacted for the benefit of defendants named in lawsuits, it was also enacted for the public's benefit, i.e., to expedite the administration of justice by declogging court calendars and putting an end to elderly cases. [Citation.] By letting this case proceed to trial instead of petitioning for mandamus relief when their motion to dismiss was denied, defendants thwarted both purposes of the statute. It was counterproductive to wait until after the case had proceeded to trial and judgment to request review of the order denying dismissal. As defendants failed to seek a pretrial resolution of the dismissal issue, we are not inclined to now disturb plaintiffs' victory on the merits." (14 Cal.App.4th at pp. 1195-1196, italics omitted.) We cannot adopt *Reid*'s reasoning here.

First, *Reid* seems to assume that a party which seeks writ review will invariably receive a speedy result on the merits. The contrary is true: "Approximately 90 percent of petitions seeking extraordinary relief are denied." (*Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1271 [258 Cal.Rptr. 66]; *Science Applications Internat. Corp.* v. *Superior Court* (1995) 39 Cal.App.4th 1095, 1100 [46 Cal.Rptr.2d 332] ["We deny the vast majority of petitions we see and we rarely explain why."].) This is so because ". . . courts will not use their scarce resources to second-guess every ruling and order of the trial court," (*Omaha Indemnity, supra,* at p. 1272) and because the too easy grant of writ relief "would interfere with an orderly administration of justice at the trial and appellate levels. Reviewing courts have been cautioned to guard against the tendency to take ' ". . . too lax a view of the 'extraordinary' nature of prerogative writs . . ." ' (8 Witkin, *supra,* at § 141, pp. 782-783) lest they run the risk of fostering the delay of trials, vexing litigants and trial courts with multiple proceedings, and adding to the delay of judgment appeals pending in the appellate court. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Agassiz* v. *Superior Court* (1891) 90 Cal. 101, 103-104 [27 P. 49]; *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 236 [111 Cal.Rptr. 539].)" (*Ibid.*) Thus, if Premium had petitioned for writ review of the trial court order setting aside the settlement, as the Bank contends it should have, the petition might well have been in vain, leaving both us and the parties in the situation we are in today, that is, in an appeal of the ruling.

More importantly, although *Reid* would require a party dissatisfied with a trial court ruling to seek writ review as a prerequisite to appeal, we do not believe that appellate courts may impose such a condition where the Legislature has not seen fit to do so.

The Legislature has determined that on appeal, ". . . the reviewing court may review the verdict or decision and any intermediate ruling, proceeding,

order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (§ 906; see *Oskooi* v. *Fountain Valley Regional Hospital* (1996) 42 Cal.App.4th 233, 237, fn. 4 [49 Cal.Rptr.2d 769] (lead opn.) [*Reid* "cannot be read to divest the trial court of its legislatively granted jurisdiction."].) The order setting aside the section 998 settlement in this case is such an order. It affects the judgment and the rights of a party. Where the Legislature has determined that public policy demands that writ review be sought before an appeal may be taken, the Legislature has so required. Such a requirement has been imposed, for example, in some circumstances in dependency cases. (Welf. & Inst. Code, § 366.26, subd, (*l*).)

Since no statute required Premium to seek writ review of the trial court ruling at issue as a prerequisite to appeal, and since there is no persuasive authority to that effect, we find that the trial court order setting aside the section 998 settlement may properly be raised on this appeal.

### Disposition

The trial court orders granting judgment notwithstanding the verdict and new trial are reversed. The matter is remanded to the trial court with directions to enter judgment in favor of Premium in the amount of the section 998 offer, $201,000. Premium is to recover costs on appeal.

Turner, P. J., and Grignon, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 22, 1999.