Filed 4/29/15  Pool v. Henderson CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JONATHAN POOL,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ALMALEE HENDERSON et al.,<br><br>　　　Defendants and Appellants. | A141210<br><br>(Alameda County<br>Super. Ct. No. RG12620088) |

Appellants Almalee Henderson, Judith Wehlau, Charles Tuggle, Katherine Miles, Nancy Epanchin, Raymond Dirodis and Rita Zwerdling appeal from an order vacating a judgment that had been entered pursuant to an offer of settlement made by respondent and accepted by appellants under Code of Civil Procedure section 998.  Appellants contend the trial court erred in concluding that the judgment was void and that appellants had committed promissory fraud in accepting the offer.  We will affirm the order.[1]

## I.  FACTS AND PROCEDURAL HISTORY

The Berkeley Town House Cooperative Corporation (BTHCC) owns and operates a high-rise residential building known as the Berkeley Town House (Town House).  The Town House is a common interest development as defined in the Davis-Stirling Common

---

[1]　Respondent filed a cross-appeal from the judgment that the trial court vacated.  In his Brief of Respondent and Cross-Appellant, he seeks no relief other than the affirmance of the order vacating the judgment.  We therefore address his arguments in the context of appellants' appeal.

1

Interest Development Act (Davis-Stirling Act). (Civ. Code, § 4000 et seq.) Residents of the Town House are senior citizens.

Respondent Jonathan Pool (Pool) is a member of BTHCC. Appellants are seven current and former members of the Board of Directors (Board) of BTHCC (Individual Defendants).

A. Pool's Complaint

In March 2012, Pool filed a complaint against BTHCC, the Individual Defendants, and a former BTHCC manager in regard to allegedly faulty work performed at the Town House and the Board's purported failure to address seismic safety issues. The complaint alleged Pool's standing to bring the action in his individual capacity and to bring the action derivatively on behalf of BTHCC. The first three causes of action were brought by Pool individually and, alternatively, by Pool "acting derivatively for Defendant BTHCC." The fourth cause of action was brought solely on behalf of Pool.

The first cause of action, asserted against five of the Individual Defendants, sought damages for waste of corporate assets and gross negligence relating to $224,415 that was spent to hire an unlicensed and unbonded contractor (Secrest), who performed faulty waterproofing and other work on the Town House.

The second cause of action, alleged against four of the Individual Defendants, sought declaratory and injunctive relief with respect to the Board's inadequate handling of seismic safety issues, including its refusal to conduct any review of the structural and seismic components of the Town House, which houses 70 senior citizens, in nine floors, less than a mile from the Hayward Fault.

The third cause of action, alleged against four of the Individual Defendants, sought injunctive relief based on the Board's failure to follow procedures mandated by the Davis-Stirling Act, the BTHCC Articles of Incorporation, and the BTHCC Bylaws; specifically Pool sought an order that they cease these violations.

A fourth cause of action, alleged against BTHCC only, was brought by Pool in his individual capacity, seeking injunctive relief and statutory penalties for BTHCC's refusal to allow him to inspect its business records pursuant to specified statutes.

BTHCC and the Individual Defendants answered the complaint in May 2012.[2]

B.  BTHCC's Cross-Complaint

In May 2012, BTHCC (only) filed a cross-complaint against two contractors who had performed the allegedly defective waterproofing—Secrest (the unlicensed contractor identified in Pool's complaint) and American Pacific Coatings, Inc.—for indemnity and apportionment of fault.

In March 2013, BTHCC filed an amended cross-complaint against Secrest, American Pacific Coatings, Inc., Esteban Cardiel (Cardiel) and others, seeking damages for negligence as well as indemnity and apportionment of fault.

C.  Court Orders Pertaining to Potential Settlement

Two case management orders addressed the need for court approval of a settlement of the derivative claims in Pool's complaint.  In July 2012, the court stated: "Counsel are reminded that settlement of a derivative action, like a class action, requires approval of the Court.  A motion for such approval may be reserved on five court days' notice."

In September 12, 2012, the court ordered:  "The [case management conference] is continued so that if a binding settlement is reached, plaintiff can file an ex parte application pursuant to [Cal. Rules of Court, rule] 3.770 seeking approval of its

---

[2]     As to the first three causes of action, BTHCC is a nominal defendant and the real party plaintiff.  (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1003-1004 [in a derivative suit brought to litigate the rights of the corporation, the corporation must be joined as a nominal defendant, but the corporation is the real party plaintiff in the action].)  Nevertheless, the attorney representing the Individual Defendants also represented BTHCC in answering the complaint.  The court subsequently granted Pool's motion to disqualify the Individual Defendants' counsel from representing BTHCC, and BTHCC eventually obtained new counsel.  Pool contends there remains a conflict of interest, however, because members of the Individual Defendants (or a spouse thereof) comprise a majority of the Board of BTHCC.

3

agreement to dismiss this 'alternative' derivative complaint. The application must be supported by a declaration authenticating the entire agreement, including any agreement with respect to payment of costs, attorneys' fees or other consideration to plaintiff and addressing whether other members of [Berkeley Town House] have received any formal or informal notice of the pendency of this action such that they may have relied upon it. If so, the Court will consider requiring plaintiff to give notice of the settlement of the action."

      D.  <u>Entry of Judgment Pursuant to Code of Civil Procedure Section 998</u>

          1.  <u>Pool's 998 Offer</u>

On October 29, 2013, Pool's attorney served the Individual Defendants and BTHCC with an offer to compromise under Code of Civil Procedure section 998 (998 Offer). The 998 Offer was worded as follows: "To Defendants Almalee Henderson, Judith Wehlau, Charles Tuggle, Katherine Miles, Nancy Epanchin, Raymond Dirodis, Rita Zwerdling, and Their Attorney of Record, and to Defendant Berkeley Town House Cooperative Corporation and Its Attorney of Record: [¶] Pursuant to Code of Civil Procedure [section] 998, Plaintiff Jonathan Pool offers to have a judgment entered in Plaintiff's favor in this action as follows: [¶] 1. On the First Cause of Action for the sum of $224,415 paid to the Defendant Berkeley Town House Cooperative Corporation ("BTHCC"); [¶] 2. Defendants waive any right to indemnification or reimbursement from BTHCC for said sum or for attorney's fees and/or costs of litigation paid by them in connection with this action; [¶] 3. Plaintiff, personally and on behalf of BTHCC, will waive any remaining claim in this action for monetary relief against any individual Defendant or BTHCC; [¶] 4. Plaintiff will retain the right to apply for reimbursement of attorney's fees and costs to be paid by BTHCC to Plaintiff for prosecuting the action. [¶] You may indicate your acceptance of this offer by signing the statement to that effect set forth below." (Capitalization altered.)

On November 11, 2013, Pool's attorney sent to the attorney for the Individual Defendants (Feller) a proposed Settlement Agreement and Release for "settlement of the *non-monetary* claims" in the case. (Italics added.) This proposed agreement stated that the settlement of the second, third and fourth causes of action was conditioned on the Individual Defendants' acceptance of the 998 Offer.

2. Acceptance of 998 Offer and Entry of 998 Judgment

On November 4, 2013, Dennis Moriarty, as counsel for BTHCC, signed the 998 Offer.

Before the Individual Defendants' counsel signed the 998 Offer, however, defendants embarked on attempts to negotiate a settlement with cross-defendants on BTHCC's cross-complaint, by which the cross-defendants would fund the $224,415 payment to be made to BTHCC under the 998 Offer. On November 19, 2013, cross-defendants Secrest and Cardiel agreed to settle the claims against them for that amount, to be paid to BTHCC.

On November 19, 2013—the date BTHCC reached its settlement with the cross-defendants—counsel for the Individual Defendants signed the 998 Offer. The fully executed and accepted 998 Offer was filed with the court on November 20, 2013.

Also on November 20, 2013, a proposed "Judgment Pursuant to Accepted Offer to Compromise [Code of Civil Procedure section 998]" (998 Judgment), containing the same material language as the 998 Offer, was submitted to the court's complex case department, where the case was pending.[3]

On December 5, 2013, the proposed 998 Judgment was signed by the judge in the complex case department and entered by the court. Despite Pool's position that the

---

[3]    On the same date, cross-defendant Cardiel filed an application for a good faith settlement determination with respect to the settlement of BTHCC's cross-complaint. (Code Civ. Proc., § 877.6.) The court granted the unopposed application on December 16, 2013, ruling that Cardiel's contribution to the settlement was made in good faith.

5

998 Offer affected only the monetary claims in the complaint, counsel for the Individual Defendants told Pool's attorney on December 5 that the entry of the 998 Judgment resolved all claims and the case was over, without the need for approval by the court.

### E. Pool's Motion to Vacate the 998 Judgment

On December 19, 2013, Pool filed a motion to vacate the 998 Judgment pursuant to Code of Civil Procedure section 473. At the time, Pool believed that the settlement of BTHCC's cross-complaint against the contractors and the settlement based on the 998 Offer (998 settlement) would result in two separate payments of $224,415 to BTHCC, resulting in a total payment to BTHCC of $448,830. Pool therefore sought to vacate the 998 Judgment so the court could approve both settlements and decide the dispute over whether the 998 settlement had resolved all claims or only monetary claims.

Specifically, Pool argued (1) because his action was derivative in nature, the court could not simply enter judgment on the 998 Offer as specified in the Code of Civil Procedure, but had to "follow the procedure for class action settlements set forth in California Rule[s of Court, rule] 3.769 by holding a hearing to make a preliminary approval of both [the 998 settlement and the settlement of the cross-complaint], followed by a court[-]approved notice to the non-party members of BTHCC to permit them an opportunity to object at a hearing for a final approval of the settlements"; and (2) the 998 Offer applied only to the first cause of action of his complaint.

### F. Individual Defendants' Opposition to Pool's Motion to Vacate

The Individual Defendants opposed Pool's motion, arguing (1) no class action-type approval of the settlement was necessary, because the 998 settlement was between Pool and the defendants only, it would not bind any nonparty member of BTHCC, and the resulting judgment would not have res judicata or collateral estoppel effect or bar the claims of any nonparty BTHCC member; (2) Pool was estopped from arguing the 998 Offer was illegitimate; and (3) the plain meaning of the 998 Offer was that it applied to Pool's entire complaint, not just the first cause of action.

6

The Individual Defendants also disclosed that, as a consequence of the 998 Offer, the defendants and cross-defendants had obtained a "global settlement" of the entire action by settling the cross-complaint, which assured that the cross-defendants would pay the $224,415 Pool sought for BTHCC. In fact, the Individual Defendants' attorney averred in a declaration that the Individual Defendants were prepared to accept the 998 Offer "only if they were absolutely certain that, as a result of settlement of the cross-complaint, the entire monetary amount specified" in the 998 Offer would be paid to BTHCC.

G. Pool's Reply Memorandum in Support of Motion to Vacate

After receiving appellants' opposition to the motion, Pool realized there would not be two payments of $224,415 to BTHCC, but effectively one: the $224,415 paid by the contractors to BTHCC would be used to pay BTHCC under the 998 Offer.

Pool asserted in his reply memorandum that he was "astonish[ed]" at the Individual Defendants' confession that they had satisfied the payment due under the 998 Judgment using the recovery BTHCC obtained on its cross-complaint. Pool argued that this (1) violated the provision of the 998 Judgment in which the Individual Defendants waived any claim for indemnification or reimbursement from BTHCC; (2) breached the Individual Defendants' fiduciary duties, since they had used their controlling position on the BTHCC Board to settle BTHCC's cross-complaint to benefit themselves; and (3) constituted fraud requiring the 998 Judgment to be vacated, in that the Individual Defendants accepted the 998 Offer "with full knowledge and intention that they were not going to comply with the no-indemnification provision."

H. Trial Court's Order Vacating 998 Judgment

By written order filed February 5, 2014, the trial court ruled that the 998 Offer pertained to the "entire dispute between Plaintiff and Defendants." The court then concluded that the 998 Judgment was void because "the required procedural prerequisites were not observed before the judgment was entered." Due to the derivative nature of Pool's complaint, the court explained, "approval in a process similar to that for class

7

actions" was required. The court added that it appeared unlikely that such approval would have been granted, "in part because Plaintiff has presented some evidence—which Defendants have not addressed—that a majority of the board that approved the settlement has a significant financial interest (either directly or through a spouse) that conflicts with the interests of BTHCC."

In addition, the court found that the 998 Judgment had been induced by fraud, since the Individual Defendants' attorney "admits that, upon receiving the 998 offer, the individual defendants raced to settle the cross-claims with the contractors, and would only accept a settlement payment from the contractors that would cover the entire amount of Plaintiff's 998 offer." The court found this to be "an admission that the individual Defendants committed promissory fraud—and is thus sufficient to invalidate and vacate the 998 offer."

The court's order concluded, "[T]he court hereby VACATES the Judgment Pursuant to Accepted Offer to Compromise [Code of Civil Procedure section 998] entered on Plaintiff's complaint on 12/5/2013, as void for lack of jurisdiction and, as an alternative and independent ground, having been procured by fraud."

This appeal followed.

## II. DISCUSSION

Appellants contend the court erred in vacating the judgment under Code of Civil Procedure section 473. We review for an abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257.)[4]

### A. The 998 Judgment Was Void

As mentioned, one of the grounds on which the trial court vacated the 998 Judgment was that it was void due to the absence of court approval following a process

---

[4]    An order vacating a judgment based on a settlement under Code of Civil Procedure section 998 constitutes an appealable order. (*Premium Commercial Services Corp. v. National Bank of California* (1999) 72 Cal.App.4th 1493, 1496; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 668 (*Pazderka*).)

8

similar to that for class actions.  The court did not abuse its discretion in reaching this conclusion.

### 1.  Court Approval Was Required

For purposes of this appeal, we accept the trial court's conclusion (and the Individual Defendants' position) that the 998 Offer resolved all of the claims in the complaint.  Some of the claims in the complaint were derivative claims, by which Pool explicitly sought recovery for BTHCC.  (See *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 313 ["An action is derivative if ' "the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets" ' "].)  Thus, the 998 Offer purported to settle derivative claims—granting recovery to BTHCC on the first cause of action and requiring dismissal of the rest.

The settlement and dismissal of derivative claims requires court approval in a process similar to that for class actions.  (*Robbins v. Alibrandi* (2005) 127 Cal.App.4th 438, 444, 449 & fn. 2 (*Robbins*); *Gaillard v. Natomas Co.* (1985) 173 Cal.App.3d 410, 419, overruled on other grounds, *Grosset v. Wenaas* (2008) 42 Cal.4th 1100 ["California courts have found that shareholder derivative plaintiffs may be considered as trustees or guardians ad litem to a corporation's right of action" and "[s]uch plaintiffs have no power to settle or compromise the corporation's action absent court approval"].)

Furthermore, the court had twice advised the parties that the court would have to approve any settlement of the derivative claims in the complaint.  In vacating the judgment, the court noted these prior orders and indicated that, if such an approval had been sought, it would not have likely been granted.  It was within the court's discretion to conclude that the absence of court approval rendered the 998 Judgment void.

### 2.  Appellants' Arguments

The Individual Defendants' arguments to the contrary are unpersuasive.

### a. Settlement Between Individual Plaintiff and Defendants Only

The Individual Defendants argue that the 998 Offer does not settle any derivative claims, but only Pool's individual claims. They contend Pool must have considered BTHCC to be a defendant rather than a plaintiff on behalf of whom he was suing derivatively, because the 998 Offer states it was made by "Plaintiff Jonathan Pool" rather than "on behalf of BTHCC," and it was written so as to be signed by counsel for "defendant" BTHCC. Furthermore, they argue, the settlement was only between Pool and the defendants and does not bind any other member of BTHCC, so it is irrelevant that Pool's complaint included claims he characterized as "derivative."

The Individual Defendants are incorrect. The 998 Offer (and 998 Judgment) provide that "Plaintiff, personally *and on behalf of BTHCC*, will waive any remaining claim in this action for monetary relief against and individual Defendant or BTHCC." (Italics added.) From this language, it is reasonable to conclude that Pool was making the 998 Offer in his individual capacity *and* his representative capacity, addressing individual claims *and* derivative claims. Moreover, the 998 Offer stated that it was made by "Plaintiff Jonathan Pool" and proposed entry of judgment "in Plaintiff's favor." Since his claims as plaintiff were brought individually and derivatively, and the 998 Offer did not expressly limit the settlement to claims he brought as an individual, the reasonable reading of the 998 Order is that it addressed both individual *and* derivative claims.

Indeed, the 998 Offer must be construed in the context of the case in which it was made. Assuming, as the Individual Defendants insist, that the 998 Offer resolved *all* of the claims asserted by the complaint, it must have resolved the derivative claims in the complaint.

### b. Judicial Estoppel

The Individual Defendants next contend that Pool is barred by the doctrine of judicial estoppel from claiming that the 998 Judgment is invalid. (Citing *Levin v. Ligon*

(2006) 140 Cal.App.4th 1456, 1468 [judicial estoppel doctrine precludes a party from asserting a position in a legal proceeding that is contrary to a position it previously took in the same or earlier proceeding].)

The Individual Defendants fail to establish that Pool has taken contrary positions for purposes of judicial estoppel. Pool did not contend that the *accepted 998 Offer* was invalid, but that *entry of judgment on* the 998 Offer was invalid without appropriate court approval. While the 998 Offer stated that Pool "offers to have a judgment entered" pursuant to Code of Civil Procedure section 998, it certainly did not say that the judgment would be entered without the approval that the court had already ordered would be necessary.

Furthermore, the court vacated the judgment on the ground it was *void* because the court *lacked jurisdiction* to enter the judgment without approval akin to what is required in class actions. The Individual Defendants present no authority that a court is precluded from finding a judgment void for excess of jurisdiction under the circumstances presented by this case, even if Pool had previously taken a contrary position.

### *c.* Robbins *and Appellants' Attempt to Distinguish It*

In asking the court to vacate the 998 Judgment, Pool relied in part on *Robbins, supra,* 127 Cal.App.4th 438. There, the court ruled that a settlement in a shareholder derivative action, including an agreement by which the corporation would pay the plaintiffs' attorney fees, required court approval to determine whether the negotiated fee was fair in light of the settlement as a whole. (*Id*. at pp. 444, 449.)

The Individual Defendants contend that *Robbins* is distinguishable, in part because *Robbins* stated, "A court reviews the settlement of a derivative suit as a means of *protecting the interests of those who are not directly represented in the settlement negotiations*." (*Robbins, supra,* 127 Cal.App.4th at p. 449, italics added.) They urge that the interests of the nonparty members of BTHCC need no such protection because the

11

998 Offer does not bind them or require BTHCC to pay anything, and nonparty members of BTHCC can still make their own claims on BTHCC's behalf.

The question, however, is not whether other members can bring another lawsuit on behalf of BTHCC, but whether the *instant* lawsuit is resolved fairly in light of their interests. And the evidence suggested the need for this very type of review, since it caused the trial court concerns about the resolution of Pool's lawsuit due to a possible conflict of interest arising from the overlap between the Individual Defendants and the majority of the BTHCC Board. The Individual Defendants' effort to distinguish *Robbins*, on this and other grounds, is unconvincing.

### d. Prior Orders

In their reply brief, the Individual Defendants argue that the prior orders requiring court approval are irrelevant because they contemplated a settlement reached in mediation, not a settlement pursuant to Code of Civil Procedure section 998.

The orders, however, do not limit themselves in this regard. On their face, the orders precluded entry of judgment after a settlement unless there was court approval, regardless of the means by which the settlement was reached.

More importantly, the *court* did not believe that its prior orders had such a narrow scope. In granting Pool's motion to vacate the 998 Judgment, the court referred to the prior orders as pertaining to the settlement of derivative claims, without limiting them to settlements via mediation. Further, the court acknowledged that it "erred in overlooking" the requirement of court approval when the proposed judgment was presented, observing that, "even less excusably, Defendants submitted the proposed [judgment] *despite two prior court orders advising that court approval was required*." (Italics added.)

The Individual Defendants have failed to establish that the court abused its discretion in vacating the 998 Judgment due to the absence of court approval.

12

B.  Promissory Fraud

As an alternative basis for its order, the court found that the 998 Judgment was procured by fraud.  The court did not err in this respect either.

1.  Substantial Evidence of Fraud

A judgment entered pursuant to Code of Civil Procedure section 998 may be vacated on the ground of fraud.  (See *Pazderka, supra,* 62 Cal.App.4th 658, 672; *DeRose v. Heurlin* (2002) 100 Cal.App.4th 158, 179.)  Fraud includes inducing entry into a contract by making a promise without any intention of performing it.  (Civ. Code, § 1572; see Civ. Code, § 1710, subd. (4).)  Substantial evidence supports the conclusion that, by accepting the 998 Offer, the Individual Defendants induced the 998 settlement by making a promise they had no intent to perform.

The 998 Offer proposed entry of judgment on the first cause of action for $224,415, paid to BTHCC, with defendants waiving "any right to indemnification or reimbursement from BTHCC for said sum or for attorney's fees and/or costs of litigation paid by them in connection with this action."  Since it would be meaningless for BTHCC to pay itself, this can only mean that the *Individual Defendants* had to pay BTHCC $224,415, without being reimbursed by BTHCC.  Thus, by signing the 998 Offer, the Individual Defendants promised not to obtain indemnification or reimbursement from BTHCC for the $224,415 they were to pay to BTHCC.

The Individual Defendants had no intent to fulfill this promise, however, since it is undisputed they had already arranged for their payment to BTHCC to be funded entirely by the amounts *BTHCC* would receive from the cross-defendants in settlement of BTHCC's cross-complaint, without the Individual Defendants contributing anything.  Their plan was not disclosed to Pool and, indeed, when Pool learned of the settlement of the cross-complaint, he believed that BTHCC was going to receive $224,415 from the 998 Judgment (paid by Individual Defendants) *and* a separate $224,415 from the settlement of the negligence cross-complaint (paid by cross-defendants).  Substantial evidence—based on the admissions of the Individual Defendants' counsel to these

13

facts—supported the court's conclusion that the elements of fraudulent inducement of a contract by false promise had been met. Accordingly, the court did not err in vacating the judgment on this ground.

### 2. Appellants' Arguments

The Individual Defendants' arguments to the contrary are unavailing.

#### a. Terms of the 998 Offer

The Individual Defendants contend they did not commit promissory fraud because the terms of the 998 Offer allowed them to do what they did. The 998 Offer calls for "the sum of $224,415 [to be] paid to . . . BTHCC" and requires defendants to "waive any right to indemnification or reimbursement from BTHCC for said sum or for attorney's fees and/or costs of litigation paid by them in connection with this action." However, they do not interpret this language to mean that the Individual Defendants had to pay the $224,415 out of their own pockets: the 998 Offer does not specify where they must get the money, as long as it is paid to BTHCC. They urge that the intent of the 998 Offer is for BTHCC to obtain the full amount of the damages specified in the first cause of action of Pool's complaint ($224,415), without any deduction to reimburse the Individual Defendants (or their insurance carrier) for monies expended in defense of the action. And that is what BTHCC got.

There are a number of problems with this analysis, but we will mention just three. First, the 998 Offer did not merely preclude the Individual Defendants from obtaining reimbursement for the money they spent in defense of the action, but for obtaining reimbursement for "*said sum* [the $224,415] *or* for attorney's fees and/or costs of litigation paid by them in connection with this action." (Italics added.) Second, although the 998 Offer does not specify that the $224,415 has to come out of the Individual Defendants' pockets, it does prohibit them from being reimbursed by BTHCC. Having BTHCC pay what the Individual Defendants were supposed to pay is the functional equivalent of reimbursing the Individual Defendants. Third, while it is true that the Individual Defendants' scheme allows BTHCC to end up with

14

$224,415, it does so only by BTHCC *giving up its cross-complaint* for general negligence (as well as indemnity) against the contractors. What the Individual Defendants secretly intended to do was contrary to what they stated they would do in signing the 998 Offer.

### b. Justifiable Reliance

The Individual Defendants also argue that Pool did not establish the justifiable reliance necessary for promissory fraud or resulting damages. They claim Pool did not rely on the Individual Defendants' acceptance of the 998 Offer, but instead repudiated it by filing a motion to vacate the judgment.

The Individual Defendants are incorrect. Pool did not repudiate the 998 Offer; he sought to vacate the *judgment* that was entered on that offer because there had not been court approval. And obviously Pool relied on the Individual Defendants' representation that they would waive any right to indemnification or reimbursement from BTHCC, since that was one of the terms on which he proposed to settle the case and compromise his causes of action. Furthermore, substantial evidence supported the conclusion that Pool's reliance was justifiable, in light of the Individual Defendants' failure to disclose their plan. And this reliance was to the detriment of Pool (and, derivatively, BTHCC), since it resulted in the loss of BTHCC's cross-complaint and any value it had beyond the $224,415 that the Individual Defendants were supposed to pay.

### c. Absence of Evidentiary Hearing

The Individual Defendants protest that "[t]he trial court made this finding of fraud without the benefit of any sort of evidentiary hearing, on the basis of an argument first made in plaintiff's reply brief supporting his motion to vacate." They claim that they "never even had the opportunity to present a written response to this argument before the trial court found them guilty of fraud."

The argument has no merit. The Individual Defendants did not *ask* the trial court for leave to file a written response to Pool's assertion of fraud. They did not ask to submit additional evidence. They have provided no authority—either at the hearing to

15

vacate the judgment or in this court—that the trial court was obligated to agree to such a request. They make no offer of proof as to what their written response would have said. And they make no showing that the result would have been any different if they had had the opportunity to file a written response. The court relied upon the evidence placed in the record by the Individual Defendants themselves, and their attorney had the opportunity to address Pool's fraud accusation orally at the hearing.

The Individual Defendants fail to establish error in the court's determination that the 998 Judgment was induced by promissory fraud.[5]

## III. DISPOSITION

The order is affirmed.

---

[5] Pool also contends the order vacating the judgment should be affirmed because the 998 Offer settled only the first cause of action. Because we find the trial court's reasons for vacating the judgment were sufficient, we need not address this further issue.

16

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.